57 S.W.3d 51 (2001)
In the Interest of A.V. and J.V., Children.
No. 10-00-124-CV.
Court of Appeals of Texas, Waco.
July 11, 2001.
*54 Nita Kissel Fanning, Law Office of Nita Fanning, Waco, for appellant.
John W. Segrest, Criminal District Attorney, James Wiley, Assistant Criminal District Attorney, Waco, for appellee.
Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

OPINION
VANCE, Justice.
From 1983 to 1993, Appellant Pablo Puig, a Cuban native who came to America in 1980, lived with Becky Vela. Pablo sold used cars and also worked as an automobile mechanic, and Becky ran a video store they owned. They have two sons: A.V. born February 5, 1986, and J.V. born March 3, 1988. J.V. has severe mental retardation with an I.Q. of about forty.
In 1993 Pablo was arrested and convicted for a federal drug offense. He was sentenced to 100 months in prison. Within months after Pablo's incarceration, Becky began failing to properly care for the children. She left them alone, unsupervised, and she sent them to school in an unhygienic condition. A referral was made to the Texas Department of Health and Regulatory ServicesChildren's Protective Services ("CPS") which began to monitor their living conditions. In 1994, when Pablo heard what was happening, he attempted *55 to break out of prison to care for his sons. His attempt failed, and he was sentenced to an additional forty months. Pablo's projected release date from prison is June 2003.
In June 1997, after continual problems with Becky's lack of proper care for the children, the State filed a petition to become managing conservator of the children, and temporary orders to that effect were issued in August 1997. The children were placed in foster care. Separate Family Service Plans for Pablo and Becky were approved by the court in September 1997. On April 28, 1998, the State amended its petition and requested termination of Pablo's and Becky's parental rights.
Pablo had a separate jury trial from January 18 to 20, 2000. Speaking through a Spanish to English interpreter, he appeared by a deposition taken, shortly before trial, in the federal prison in which he was incarcerated. He testified:
Q: Okay. What is your understanding of [J.V.]'s mental retardation?
A: That's the biggest problem that I have. That's the one that hurts me the most because I know he will always need me, and if they separate him and put him away somewhere else, he'll never be the same. Are they going to put him in a hospital somewhere? He will not be taken care of as well there or with any other parents that adopt him. I don't think he will ever be the same. I don't think anybody would ever take care of him with the love that I'll give him.
...
Q: What other things could you do for [J.V.] once you are out in the free world?
A: I would do everything necessary to support him and take care of him like he should be taken care of, and if I have to attend and pass any course that you-all direct me to, I will be willing to do that.
The jury's verdict was to terminate, and the judge signed an order terminating Pablo's parental rights on January 26, 2000.
Becky's rights were terminated on March 7, 2000, after a hearing on January 25, 2000, in a proceeding separate from Pablo's. She did not appeal from that decision.
Pablo appeals six issues: Issues one and two are that the two statutory grounds from the Family Code on which his parental rights were terminated are retroactive laws in violation of the Texas Constitution. Issue three is that the evidence is legally and factually insufficient to support termination under one of the two grounds in the petition. Issues four and five complain about errors in the charge. Issue six complains of the contents of the judgment. We will reverse the judgment and remand for a new trial.

REVIEW OF OUR HOLDINGS IN TERMINATION CASES
Recently we have issued opinions setting forth the standards we use in reviewing involuntary termination-of-parental-rights cases. Some of our conclusions have been reached by following other courts. Some have been novel. All show our recognition that termination cases, while civil in nature, have attributes which set them apart from other civil cases. The special character of termination cases is reflected in the fact that the standard of proof, "clear and convincing evidence," is higher than that ordinarily used in civil cases, i.e., "preponderance of the evidence." This higher standard is because parents' rights to an association with their children is a Fourteenth Amendment liberty interest. Troxel v. Granville, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49 (2000); U.S. CONST. amend. XIV, § 1. Accordingly, Fourteenth Amendment procedural *56 due process must be followed in termination proceedings. State laws or rules of procedure are superseded by this directive. U.S. CONST. art. VI ("This Constitution... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby....").
Also setting termination cases apart from other civil cases is that in some respects termination cases are similar to criminal cases. For example, in both termination cases and criminal cases the standard of proof is greater than in ordinary civil cases. This similarity is not to the same extent as, but nevertheless reminds us of, juvenile-justice cases, which partake of both civil and criminal law. E.g., In the Matter of C.O.S., 988 S.W.2d 760, 763-65 (Tex.1999) (Because juvenile justice cases are "quasi-criminal" in nature, the analysis set forth in Marin v. State, 851 S.W.2d 275, 278 (Tex.Crim.App.1993), regarding when complaints must be preserved for appeal applies in juvenile cases.) Furthermore, one of our stated goals is that civil and criminal jurisprudence be "harmonized." E.g., Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App.2000); In the Matter of C.M.G., 905 S.W.2d 56, 58 (Tex.App.-Austin 1995, no writ) (Section 54.03(e) of the Family Code, which is identical in substance to article 38.14 of the Code of Criminal Procedure, is interpreted pursuant to the decisions of the criminal courts.). Accordingly, we have drawn from criminal law to reach some of our conclusions.
Our recent opinions have been an attempt to uphold the constitutional principles at stake in termination cases, i.e., to ensure that the right a parent has regarding a child is protected. In so doing, we acknowledge the inherent tension between the constitutional right of parents to the care, custody, and control of their children, and the need for the protection of children, which is, from the point of view of the State and the Family Code, the most important matter in termination cases. To place the issues in Pablo's case in perspective, we first review our recent opinions.
Review of Unpreserved Sufficiency-of-the-Evidence Complaints about "Core Issues"
In In the Interest of A.P. and I.P., 42 S.W.3d 248 (Tex.App.-Waco 2001, no pet. h.), the parent raised a complaint on appeal about the sufficiency of the evidence to support termination. The complaint was not raised in the trial court. We defined the two "core issues" in termination cases as (1) whether at least one of the statutory grounds for termination in section 161.001(1) of the Family Code has occurred, and (2) whether termination is in the "best interest" of the child. TEX.FAM. CODE ANN. § 161.001(1), (2) (Vernon Supp. 2001). We held that procedural due process requires that we review legal and factual sufficiency complaints about "core issues" even when not preserved in the trial court, although the rules may instruct otherwise. Tex.R.Civ.P. 324(b); TEX. R.App.P . 33.1. We cited Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), and Holick v. Smith, 685 S.W.2d 18 (Tex.1985), for the proposition that Fourteenth Amendment procedural due process requires "strict scrutiny" in termination cases, which precludes us from refusing to review an unpreserved complaint about insufficient evidence of a "core issue." In addition, we thought it a "logical extension" to apply the rule in criminal cases that sufficiency-of-the-evidence complaints do not require preservation.
Review of Unpreserved Charge Complaints about "Core Issues"
Following on the heels of A.P. and I.P., we issued In re J.F.C., A.B.C., and M.B.C, 57 S.W.3d 66 (Tex.App.-Waco, 2001). A blatant error in the jury charge *57 concerning the "best interest" finding was raised on appeal, even though there had been no objection to the charge at trial. Citing A.P. and I.P., and for the same due-process reasons, we held that we would review unpreserved jury-charge errors concerning "core issues." We also performed a "Lassiter test" and reached the same conclusion.[1]
The Right to Effective Assistance of Counsel; Disjunctive Questions
In In re B.L.D. and B.R.D., 2001 WL 551165 (Tex.App.-Waco, May 23, 2001), the parents were represented by a single lawyer appointed under section 107.103(a) of the Family Code. Tex.Fam.Code Ann. § 107.013(a) (Vernon Supp.2001). Parents have a statutory right to counsel in termination cases. Because the state of the evidence allowed for the possibility that the jury might find grounds for terminating the rights of either parent and not the other, the lawyer was placed in a conflict of interest as to which parent's position to most forcefully advance. The issue then became whether the parents' statutory right to counsel included the right to effective representation, just as the Sixth Amendment right to counsel in a criminal proceeding includes the right to effective representation. U.S. CONST. amend. VI. We concluded that it does, citing the procedural due process concerns we expressed in A.P. and I.P. and J.F.C., A.B.C., and M.B.C.[2] We also noted "our recognition that it is appropriate in termination cases to `extend' and harmonize with criminal jurisprudence." B.L.D., 2001 WL 551165, at *6.
We also analyzed the potential conflict between Rule 292 of the Rules of Civil Procedure, requiring the concurrence of at least ten jurors before a verdict can be rendered, and Rule 277 requiring broad-form submission of questions. TEX. R.CIV.P. 277, 292. The charge in a termination case typically, as it did in B.L.D. and B.R.D., includes a set of instructions about the alleged statutory grounds for termination, set forth disjunctively, and about whether termination is in the best interest of the child, followed by a broad-form question which simply asks "Should the parental rights be terminated?" The parents complained that it was impossible to review whether ten jurors had concurred on a single statutory ground for termination. We analyzed the issue by harkening back to our overriding concern for Fourteenth Amendment procedural due process in termination cases. We questioned if under due process it was permissible to charge a jury in such a way that less than ten jurors might agree on the ground for termination. We noted that a case may be reversed when an error *58 "probably prevented the appellant from properly presenting the case to the court of appeals." Tex.R.App.P. 44.1(a). We examined federal and Texas criminal law about when facts or issues must be separately decided by the jury, and we concluded by analogy that because the statutory grounds are more like separate criminal offenses than like separate means of committing a single offense, the jury must be charged in such a way that at least ten jurors agree on the specific grounds for termination. Our order on remand stated that on retrial the jury must be instructed that ten or more jurors must agree on at least one ground for termination, and in addition, the same ten must agree on the "best interest" issue.
Summary
In summary, we review involuntary termination-of-parental-rights cases according to the following standards:
1. The two "core issues" are (1) whether at least one of the statutory grounds for termination in section 161.001(1) of the Family Code has occurred, and (2) whether termination is in the "best interest" of the child.
2. To comport with procedural due process, we will review unpreserved complaints about the legal and factual sufficiency of the evidence regarding "core issues."
3. To comport with procedural due process, we will review unpreserved complaints about jury-charge errors concerning "core issues."
4. As a matter of procedural due process, the jury charge, by instructions or individual questions, must ensure that "core issues" are decided by the same ten (or more) jurors.
5. Parents have a procedural due-process right to "effective assistance of counsel."

DISJUNCTIVE JURY CHARGE
Pablo's fourth and fifth issues mirror the charge issues we addressed in B.L.D. and B.R.D. Pablo did not object to the charge at trial; however, following J.F.C., A.B.C., and M.B.C., we will review the issues.
The petition alleged two statutory grounds for termination under sections "N" and "Q" of the Family Code. TEX.FAM. CODE ANN. § 161.001(1)(N), (Q) (Vernon Supp.2001). As is usually the case, the charge set forth the grounds disjunctively, and the jury was instructed that it must find at least one of the grounds in order to terminate. The jury was also instructed that it must find termination to be in the children's "best interest." There was an instruction on "ten or more jurors," but it said "You may render your verdict upon the vote of ten or more members of the jury. The same ten or more of you must agree upon all of the answers made and to the entire verdict." However, the "answers" were only to two broad-form questions, each of which asked if the parent-child relationship should be terminated as to one child.
The circumstances concerning the charge are identical to those in B.L.D. and B.R.D. Therefore, for the same reasons, we sustain issues four and five.

RETROACTIVE LAW
The petition sought to terminate Pablo's rights based on two statutory grounds under section 161.001:
The court may order termination of the parent-child relationship if the court finds by clear and convincing evidence:
(1) that the parent has:
...
(N) constructively abandoned the child who has been in the permanent *59 or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months, and:
(i) the department or authorized agency has made reasonable efforts to return the child to the parent;
(ii) the parent has not regularly visited or maintained significant contact with the child; and
(iii) the parent has demonstrated an inability to provide the child with a safe environment;
...
(Q) knowingly engaged in criminal conduct that results in the parent's imprisonment and inability to care for the child for not less than two years from the date of filing the petition.[3]
Tex.Fam.Code Ann. § 161.001(N), (Q) (Vernon Supp.2001).
"N" as originally enacted was made effective September 1, 1995. The length of time required for the child to have been under the managing conservatorship of the Department was twelve months. That was amended effective September 1, 1997, to six months. "Q" was enacted in 1997, effective September 1, 1997. The amended petition requesting that Pablo's rights be terminated was filed April 23, 1998. Trial commenced on January 18, 2000.
Pablo complains in issues one and two that under article I, section sixteen of the Texas Constitution, "N" and "Q" are unconstitutional retroactive laws as applied to him. Section sixteen is titled "Bills of Attainder; ex post facto or retroactive laws; impairing obligation of contracts," and reads: "No bill of attainder, ex post facto law, retroactive law, or any other law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16.[4] The provision prohibits the application of new statutes to disturb vested, substantive rights. Ibarra v. State, 11 S.W.3d 189, 192 (Tex.Crim.App.1999), cert. denied, 531 U.S. 828, 121 S.Ct. 79, 148 L.Ed.2d 41 (2000). Generally, it does not apply to new procedural laws. Id. "[R]etroactive laws affecting vested rights that are legally recognized or secured are invalid." Barshop v. Medina Under. Wat. Cons. Dist., 925 S.W.2d 618, 633 (Tex. 1996); Texas Water Rights Commission v. Wright, 464 S.W.2d 642, 648 (Tex.1971).[5]
Pablo preserved these issues for appellate review by objecting on the basis of retroactivity in a motion for directed verdict at the close of the State's evidence, and again objecting at the charge conference.
The crux of Pablo's complaint is that his parental rights are vested under the Fourteenth *60 Amendment, and subsections "N" and "Q" as applied in this case operate retroactively to disturb his parental rights. His argument is that the six-month and two-year periods respectively in "N" and "Q" include, at least in part, time which was prior to the effective dates of the subsections. He relies on two cases to support his argument.
In In re R.A.T., 938 S.W.2d 783 (Tex. App.-Eastland 1997, writ denied), an "N" case, the petition was filed on December 1, 1995. Trial began on January 29, 1996. At that time the 1995 version of "N" was in effect requiring the Department to have been the conservator of the child for twelve months. Therefore, for the Department to prevail, the seven months prior to the amendment's effective date had to be included as part of the twelve months. The Eastland court held that parental rights are "vested" rights subject to article I, section sixteen. Id. at 784. It also held that including the seven months was an impermissible retroactive law. Id. Because a "vested" right was involved, the court rejected the State's argument that the court should follow the enabling statute which expressly applied "N" to "pending suits ... without regard to whether the suit was commenced before, on or after the effective date." Id. The court found the error reversible even though there were four other statutory grounds on which to terminate which were supported by the evidence. Id. at 785.
In Interest of Shaw, 966 S.W.2d 174, 179-82 (Tex.App.-El Paso 1998, no pet.) is a case like R.A.T. The trial court found that the parent had failed to contact the Department or the children from September 13, 1994 to November 14, 1995. The El Paso court found the inclusion of the time period prior to September 1, 1995, to be a retroactive application of the law. The court agreed with the conclusions reached in R.A.T. "N" was the only ground on which the evidence supported termination, and the cause was reversed.
As to "N," we do not agree with Pablo's argument. The subsection went into effect on September 1, 1997. The amended petition was filed on April 23, 1998. The trial was on January 18, 2000. Whether the six-month period extends back from the date of the petition or the date of trial,[6] the six-month period did not start before September 1, 1997. As applied to Pablo, "N" is not retroactive.[7]
However, as to "Q" we agree with Pablo. The subsection went into effect on September 1, 1997. The amended petition was filed on April 23, 1998. The applicable time period is two years before the petition was filed. Thus the two-year period extended retroactively almost sixteen months before "Q" was effective. If the petition had been filed on or after September 1, 1999, the law would not have been retroactive as to Pablo.
The State argues that not every retroactive law is unconstitutional. One reason is that there is a public policy exception that validates a retroactive law which is necessary to safeguard public safety and welfare. Barshop, 925 S.W.2d at 633-34. But there are numerous statutory grounds by which termination can be accomplished. Also, the legislature did not find "Q" urgent enough to enact it until 1997. Therefore, we do not find "Q" necessary to safeguard the public safety and welfare. Another exception the State raises applies when the party complaining of *61 the retroactive law could have or should have anticipated the law and protected himself against it. Wright, 464 S.W.2d at 648-49. However, we do not agree that Pablo could have or should have anticipated the enactment of "Q." Finally, the State's reliance on a third exception, i.e., that the complaining party was given a reasonable opportunity to protect its interests affected by the retroactive law, is misplaced. Id. at 649; City of Tyler v. Likes, 962 S.W.2d 489, 502 (Tex.1997). That exception applies when the retroactive law is enacted but is not yet in effect, and the complaining party can act to avoid the consequences of the law before it takes effect. Here, Pablo was imprisoned years before "Q" was enacted, and because he was in prison, he did not have an opportunity to avoid the effects of "Q" before (or after) it went into effect.
We find that "Q" as applied to Pablo in this case is an unconstitutional retroactive law. Having found error, we look for harm.[8] Under a harm analysis, we will reverse if the error "probably caused the rendition of an improper judgment." TEX.R.APP.P. 44.1(a). "N" and "Q" are the two possible grounds on which Pablo's parental rights can be terminated. However, we will sustain (infra) the sufficiency-of-the-evidence issue for "N." Therefore, the only possible ground remaining for termination is "Q." But applying "Q" is unconstitutional. Consequently, inclusion of "Q" in the jury charge caused the rendition of an improper judgment, because absent "N" and "Q" in the charge, there is no basis for termination.
We overrule issue one, and sustain issue two.

SUFFICIENCY OF THE EVIDENCE
Issue three is that the evidence is legally and factually insufficient to support a finding under subsection "N." That ground for termination requires four fact-findings by the jury:
1. The parent "constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Protective and Regulatory Services or an authorized agency for not less than six months."
2. "The department or authorized agency has made reasonable efforts to return the child to the parent."
3. "The parent has not regularly visited or maintained significant contact with the child."
4. "The parent has demonstrated an inability to provide the child with a safe environment."
Tex.Fam.Code Ann. § 161.001(1)(N) (Vernon Supp.2001).
To determine whether the evidence is legally sufficient to support a jury finding, we consider only the evidence supporting the verdict and "in the light most favorable to the party in whose favor the verdict has been rendered, and every reasonable inference deducible from the evidence is to be indulged in that party's favor." We will find the evidence legally insufficient if: (1) there is a complete absence of evidence for the finding, (2) there is evidence to support the finding, but rules of law or evidence bar the court from giving any weight to the evidence, (3) there is no more than a mere scintilla of evidence to support the finding, or (4) the evidence conclusively establishes the opposite of the finding. Merrell Dow Pharms, Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 362-63 *62 (1960)). "More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, `rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499 (Tex.1995) (quoting Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex.1994)). The "no evidence" standard is the same for findings made under the "clear and convincing standard" as for a preponderance standard. See Justice Bill Vance, The Clear and Convincing Evidence Standard in Texas: A Critique, 48 Baylor L.Rev. 3 (1996). If there is legally insufficient evidence for any of the four elements, the complaint will be sustained.
The Department became conservator on August 4, 1997. The amended petition was filed on April 23, 1998. Trial commenced on January 18, 2000. Therefore, the first element, i.e., that the Department had been the conservator of the children for at least six months, is not in dispute. However, the next inquiry is: To what time period do the other three elements pertain? "The 1995 amendment adding Subsection (1)(N) provide[d] a new ground to be used in those situations in which a child has been removed from a home before serious damage to the child has occurred, and before a termination ground exists. Thereafter, a ground for termination may come into existence if the parent does not maintain contact with the child and does not take the steps required to convince the court that the child can be safely returned to the parent." Shaw, 966 S.W.2d at 179 (quoting Sampson & Tindall's Texas Family Law Annotated Comment, p. 661 (West, August 2000)). Therefore, elements two, three, and four must have occurred after the Department became the conservator, which in this case was August 4, 1997.
As to the second element, it is undisputed, and the State admits, that the Department or another authorized agency never made any effort to return the children to Pablo. Obviously, that is because he was in prison. Nevertheless, there was no evidence of this element. The State complains that it was impossible to return the children to Pablo because he was in prison. We note that the State would deny the same "impossibility" defense to Pablo as to why he did not comply with elements three and four, i.e., "The parent has not regularly visited or maintained significant contact with the child," and "The parent has demonstrated an inability to provide the child with a safe environment." We suggest the underlying problem in the impossibility of the State's fulfilling the second element is that "N" was never intended to apply to someone in Pablo's circumstances. That is the purpose of "Q." Otherwise, "Q" becomes redundant to "N."
Because the evidence is legally insufficient as to one of the required elements to support an affirmative jury finding on "N," we sustain issue three.

THE JUDGMENT
Issue six complains that the judgment violates statutory requirements, due process, and due course of law, and does not support termination of Pablo's parental rights. Because we reverse on other grounds, we will not decide this issue.

CONCLUSION
The judgment is reversed, and the cause is remanded for proceedings consistent with this opinion, except for issue number three, legal insufficiency of the evidence to support a finding under "N," which we render in favor of Pablo. As we said in In the Interest of B.L.D. and B.R.D, on retrial, jurors should be instructed that to answer "yes" to a broad-form termination *63 question regarding Pablo and a particular child, ten or more jurors must agree that Pablo committed at least one of the statutory grounds for termination regarding that child, if more than one ground is alleged, and the same ten must agree that termination of Pablo's parental rights is in that child's best interest. Alternately, individual questions as to each ground for terminating and best interest as to each child may be submitted if broad-form submission is not "feasible." Tex.R.Civ.P. 277.
GRAY, Justice, dissenting.
Pablo had the same rights as everyone. Pablo could have chosen to avoid the consequences of committing crime simply by not committing crime. He elected to commit a crime and is now suffering the civil consequences thereof. The State has a legitimate interest in providing for the best interest of children whose parents are not able to take care of them.
Pablo says the new law impacts a vested right. Even while incarcerated, Pablo had all the rights of a parent. His parental rights are not being terminated because he is incarcerated. While incarcerated he also had all the parental obligations of any other parent. His parental rights are being terminated because while he has been incarcerated he has failed to fulfil his parental obligations.
Because there is sufficient evidence that Pablo committed the predicate act for termination of his parental rights as set forth in subsection Q, I would overrule his challenge to this ground. Tex.Fam.Code Ann. § 161.001(1)(Q) (Vernon Supp.2001). Because only one ground for termination need be alleged and proved, I would affirm the termination on this ground. Presumably, because we are now beyond September 1, 1999, the State may file a new petition alleging subsection Q as a ground for termination based on the two year time period prior to the date of the filing of the new petition and it would not suffer from the retroactivity problem as defined by the majority.
I have dissented from the litany of this Court's cases discussed in the majority opinion with one exception. I agree that to perform our duty to strictly scrutinize the termination of parental rights, it is necessary to review claims of legal and factual insufficiency of the evidence that were not properly raised in the trial court. See In the Interest of A.P. and I.P., 42 S.W.3d 248 (Tex.App.-Waco 2001, no pet. h.). While I am bound by the prior decisions of this Court, because of the recency of those decisions and because motions for rehearing or petitions for review have been filed in several of those cases, I feel it is nevertheless appropriate to note my dissent in this case.
Accordingly, I respectfully dissent from the majority opinion for the reasons expressed herein and in the dissents to the opinions relied upon by the majority.
NOTES
[1] In a "Lassiter test," the question of "what process is due" is to be answered by presuming that the procedure in question, i.e., that unpreserved complaints about charge errors concerning "core issues" will not be reviewed on appeal, does not violate due process, and then determining whether that presumption is rebutted by weighing (1) the private interests at stake, (2) the government's interest, and (3) the risk that the procedure will lead to erroneous decisions. Lassiter v. Dept. of Social Services, 452 U.S. 18, 27, 101 S.Ct. 2153, 2159, 68 L.Ed.2d 640 (1981).
[2] Accord, In the Interest of J.M.S., 43 S.W.3d 60, 2001 WL 220248 (Tex.App.-Houston [1st Dist.], March 1, 2001). Contra: In re B.B., 971 S.W.2d 160, 172 (Tex.App.-Beaumont 1998, pet. denied); Arteaga v. Texas Dep't of Protective and Regulatory Servs., 924 S.W.2d 756, 762 (Tex.App.-Austin 1996, writ denied); In Interest of J.F., 888 S.W.2d 140, 143 (Tex.App.-Tyler 1994, no writ); Posner v. Dallas County Child Welfare Unit, 784 S.W.2d 585, 588 (Tex.App.-Eastland 1990, writ denied); Howell v. Dallas County Child Welfare Unit, 710 S.W.2d 729, 734-35 (Tex.App.-Dallas 1986, writ ref'd n.r.e.).
[3] Although inapplicable to Pablo's case, "Q" was amended in 1999 to read: "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense; and (ii) confinement or imprisonment and inability to care for the child for not less than two years from the date of filing of the petition."
[4] For a general discussion of retroactive laws see Bryant Smith, Retroactive Laws and Vested Rights, 5 TEX.L.REV. 231 (1927), and 6 TEX. L.REV. 409 (1928).
[5] By comparison, an ex post facto law (1) punishes as a crime an act previously committed which was innocent when done, (2) changes the punishment and inflicts a greater punishment than the law attached to the criminal offense when committed, (3) deprives a person charged with a crime of any defense available at the time the act was committed, or (4) alters the legal rules of evidence and requires less or different evidence than the law required at the time of the commission of the offense. Grimes v. State, 807 S.W.2d 582, 584-86 (Tex.Crim.App. 1991); Johnson v. State, 930 S.W.2d 589, 591 (Tex.Crim.App.1996).
[6] It is not clear from "N," R.A.T., or Shaw from what points in time the six months may run.
[7] Pablo does not attack "N" on any other grounds.
[8] According to R.A.T., a harm analysis is not required.