**Gene Olin BRICE, Appellant,**

v.

**Lisa K. DENTON, Appellee.**

**and**

**In the Interest of A.R.B. and B.J.B., Children.**

No. 10–01–392–CV.

Court of Appeals of Texas, Waco.

March 10, 2004.

**140**

Gene Olin Brice, Dayton, pro se.

Shelly D. Fowler, Cleburne, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.[1]

## OPINION

BILL VANCE, Justice.

The issue in this case is whether an indigent parent who was proceeding *pro se* is denied effective assistance of counsel when an attorney ad litem is a) appointed on the day of a final hearing on the petition to terminate his parental rights, b) does not request a continuance, c) does not communicate with her client, and d) proceeds to trial. We hold that he was denied effective assistance of counsel.

## BACKGROUND

Lisa Denton filed suit to terminate the parental rights of Gene Brice, the biologi-

cal father of their two children. Brice is currently an inmate of the Texas Department of Criminal Justice, Institutional Division. Brice filed a *pro se* answer opposing termination, along with a "Declaration of inability to pay costs." Eight days before the scheduled hearing, Denton sent Brice a letter informing him of the setting of a "final hearing" on the case. Brice, in prison, received this notice five days before the hearing and could not attend the hearing. The trial court appointed an attorney ad litem for Brice on the day of the final hearing. TEX. FAM.CODE ANN. § 107.013(a)(1) (Vernon 2002). Without consulting with Brice, the appointed attorney allowed the hearing to proceed. After hearing no evidence from Brice during the hearing except a perfunctory cross-examination of Denton by Brice's appointed attorney, the trial court found by clear and convincing evidence that Brice engaged in criminal conduct that resulted in his being "convicted or placed on community supervision" for violating section 22.021 of the Texas Penal Code. *Id.* § 161.001(1)(L)(viii) (Vernon 2002); TEX. PEN.CODE ANN. § 22.021 (Vernon Supp.2004). Further, the trial court found that termination of Brice's parental rights was in the best interest of the children. TEX. FAM.CODE ANN. § 161.001(2) (Vernon 2002). The court signed an order terminating Brice's parental rights. *Id.* § 161.206 (Vernon 2002). We granted an extension of time to file a notice of appeal, which Brice did.

On appeal, Brice complains that the trial court erred by not appointing an attorney ad litem before the day of the final hearing, thereby denying him effective assistance of counsel and violating his right to due process (Issue one). Brice further contends that the attorney appointed to

---

1. This case was submitted with former Chief Justice Davis on the panel, but he resigned effective August 4, 2003. Justice Reyna, who took the oath of office on January 5, 2004, participated in the decision of the court.

represent him provided ineffective assistance of counsel during the hearing (Issue four). In additional issues, Brice complains that the trial court erred by preventing him from timely requesting a jury by appointing an attorney ad litem on the day of the final hearing, or, alternatively, by proceeding to final hearing without giving Brice the required notice under Rule of Civil Procedure 245, and by failing to rule on a request for a bench warrant to allow Brice to attend the final hearing. We will reverse the trial court's order and remand the cause for further proceedings.

## TERMINATION CASES—THE LEGAL STANDARD

■ The termination of parental rights involves fundamental constitutional rights. *In re A.V.*, 57 S.W.3d 51, 56 (Tex.App.-Waco 2001), *rev'd on other grounds*, 113 S.W.3d 355 (Tex.2002); *In re B.L.D.*, 56 S.W.3d 203, 210 (Tex.App.-Waco 2001), *rev'd on other grounds*, 113 S.W.3d 340 (Tex.2003); *In re Verbois*, 10 S.W.3d 825, 830 (Tex.App.-Waco 2000, orig. proceeding). Given this significance, involuntary-termination statutes must be strictly construed in favor of the parent. *In re M.J.M.L.*, 31 S.W.3d 347, 350 (Tex.App.-San Antonio 2000, pet. denied); *Odoms v. Batts*, 791 S.W.2d 677, 680 (Tex.App.-San Antonio 1990, no pet.). Section 107.013 of the Texas Family Code provides that "the court shall appoint an attorney ad litem to represent the interests of ... an indigent parent of the child who responds in opposition to the termination." TEX. FAM.CODE ANN. § 107.013(a)(1). Texas courts have held that trial courts must appoint counsel for indigent parents in these cases and failure to do so is error. *In re M.J.M.L.*, 31 S.W.3d at 354; *Odoms*, 791 S.W.2d at 680. But, a precise requirement as to when counsel must be appointed in a termination proceeding has not been discussed. *See In re J.R.P.*, 55 S.W.3d 147,

150 (Tex.App.-Corpus Christi 2001, pet. denied); *In re M.J.M.L.*, 31 S.W.3d at 354. Nor has a parent's right to represent himself been fully explored.

■ The Texas Supreme Court has held that "the statutory right to counsel in parental-rights termination cases embodies the right to effective counsel." *In re M.S.*, 115 S.W.3d 534, 544 (Tex.2003). Thus, when the trial court decided to appoint counsel to represent Brice, counsel's obligation to provide effective assistance arose. *See id.*

■ In analyzing the effectiveness of counsel in the context of a termination of parental rights, we follow a two-pronged test that was set forth by the United States Supreme Court in *Strickland v. Washington*, to determine whether an attorney's representation was so inadequate as to be in violation of the Sixth Amendment right to effective assistance of counsel. *Id.* at 545 (*citing Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). In order to show ineffectiveness of counsel in a termination-of-parental-rights case, the appellant must show that counsel's assistance fell below an objective standard of reasonableness and that counsel's deficient assistance, if any, prejudiced the defendant. *Id.* at 545 (*citing Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064). We acknowledge that there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* (*quoting Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065).

## INEFFECTIVE ASSISTANCE OF COUNSEL

■ Brice's fourth issue contends that the attorney appointed to represent him provided ineffective assistance of counsel during the termination hearing. The trial

court appointed Brice's attorney ad litem on the day of the final hearing. Nothing in the record suggests that Brice's appointed counsel requested a continuance from the trial court. The appointed attorney had no opportunity to meet with or consult her client, who was in prison, and she apparently requested none. The record further shows that counsel's preparation for this hearing was to review Brice's "criminal history." Her presentation of evidence filled one and a half pages of the reporter's record of the final hearing and consisted of a cross-examination of Denton. During this cross-examination Brice's appointed counsel adduced evidence that Brice had been "arrested for numerous things including harassment and stalking and several indecency [sic] with a child and indecent exposure, DWI." Applying the first prong of the effectiveness-of-counsel test, we conclude that counsel's assistance in this case fell below an objective standard of reasonableness.

Next we must consider the question of whether counsel's deficient assistance in this case prejudiced Brice. For guidance we look again to *Strickland*, where the United States Supreme Court made it clear that although the burden upon the appellant is high, a criminal defendant "need not show that counsel's deficient conduct more likely than not altered the outcome in the case." *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2068. In fact, "in every case the court should be concerned with whether, despite the strong presumption of reliability [of the trial's outcome], the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Id.* at 696, 104 S.Ct. at 2069. In this case there was just such a breakdown in the adversarial process. Counsel took no opportunity to interview Brice, to request a writ of habeas corpus ad testificandum, to find and inter-view potential witnesses, to investigate the conviction that was the basis for termination, to request a jury, or to challenge the pleadings or the statute. Applying the second prong of the test, we believe that Brice was prejudiced by his counsel's deficient assistance. Accordingly, we hold that Brice was denied effective assistance of counsel. Issue four is sustained.

## OTHER ISSUES

Because we reverse, we do not reach Brice's additional issues, but we are confident that, upon remand, the parties will be afforded the full protections due them under our Rules of Civil Procedure.

## CONCLUSION

In sum, we hold that Brice was denied effective assistance of counsel. We therefore reverse the judgment and remand the cause for further proceedings.

Chief Justice Gray dissenting.

TOM GRAY, Chief Justice, dissenting.

This is an attempted pro-se accelerated appeal of an order terminating the parent-child relationship, in which the attempted appellant failed to file a timely notice of appeal. Ignoring Brice's failure to invoke this Court's jurisdiction, the majority disregards our precedent in failing to consider Brice's conditional constitutional right to appointed counsel on appeal, and then holds that Brice's statutorily appointed attorney ad litem at trial failed to render effective assistance of counsel. Because the majority disregards the limits of our jurisdiction, disregards our precedents in failing to consider the matter of the appointment of counsel on appeal, and then patently errs in its determination of the issue of the assistance of counsel at trial, I respectfully but strenuously dissent.

This Dissenting Opinion thus involves issues of constitutional law. *See* Tex. R.App. P. 47.4(b).

## I. JURISDICTION

As far as the record before us shows, we manifestly lack jurisdiction of this cause. In acting outside of our jurisdiction as provided by law, we violate the requirements of due process of law and due course of law that is due Brice's children and their mother.

### I.A. Legal Background

The parties do not raise the matter of our jurisdiction, and the majority fails to consider it. Yet the threshold issue in every case is whether the court has jurisdiction. "[J]urisdiction of the court means the power or authority which is conferred upon a court ... to hear and determine causes between parties, and to carry its judgments into effect." *Withers v. Patterson*, 27 Tex. 491, 496 (1864). It is the blackest of black-letter law that due process and due course of law require that courts act only within the legal limits of their jurisdiction. *See* U.S. Const. amend. XIV, § 1; *Quill Corp. v. North Dakota*, 504 U.S. 298, 307, 112 S.Ct. 1904, 119 L.Ed.2d 91 (1992); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002), *cert. denied*, 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003); *U-Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977); *Lacefield v. Elec. Fin. Group*, 35 S.W.3d 755, 759–60 (Tex.App.-Waco 2000, no pet.); *see also* Tex. Const. art. I, §§ 13, 19; *Patterson v. Planned Parenthood of Houston & S.E. Tex., Inc.*, 971 S.W.2d 439, 445 (Tex.1998) (standing).

In particular, "subject matter jurisdiction refers to the court's power to hear a particular type of suit." *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex.1996) (orig. proceeding). "[S]ubject-matter jurisdiction is a power that 'exists by operation of law only, and cannot be conferred upon any court by consent or waiver[.]'" *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 76 (Tex.2000) (quoting *Fed. Underwriters Exch. v. Pugh*, 141 Tex. 539, [541], 174 S.W.2d 598, 600 (1943)); *see W. Orange–Cove Consol. I.S.D. v. Alanis*, 107 S.W.3d 558, 583 (Tex.2003). "The question of jurisdiction is fundamental and can be raised at any time." *Tullos v. Eaton Corp.*, 695 S.W.2d 568, 568 (Tex.1985) (per curiam); *see In re B.L.D.*, 113 S.W.3d 340, 350 (Tex.2003); *accord Blum v. Lanier*, 997 S.W.2d 259, 261 (Tex.1999) (standing). The Texas Supreme Court considers seriously its power "to prevent lower courts from exceeding their constitutional and statutory limits of authority." *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex.1993). That Court has said that it "cannot blindly affirm ... a decree entered by a trial or intermediate appellate court which had no jurisdiction of the subject matter, merely because the litigants have not seen fit to assign error." *McCauley v. Consol. Underwriters*, 157 Tex. 475, 478, 304 S.W.2d 265, 266 (1957).

For this reason, the Texas Rules of Appellate Procedure provide that "on its own initiative after giving ten days' notice to all parties ... the appellate court may dismiss the appeal ... if the appeal is subject to dismissal ... for want of jurisdiction." Tex.R.App. P. 42.3. Indeed, even if the litigants do not raise the matter, an appellate court not only may but must consider its jurisdiction *sua sponte*. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex.1998) (ripeness); *Aguilar v. Weber*, 72 S.W.3d 729, 731 (Tex.App.-Waco 2002, no pet.).

The Texas Constitution establishes that the courts of appeals "shall have appellate

jurisdiction co-extensive with the limits of their respective districts, which shall extend to all cases of which the District Courts or County Courts have original or appellate jurisdiction, under such restrictions and regulations as may be prescribed by law." TEX. CONST. art. V, § 6. The Legislature has by law provided for Supreme–Court rulemaking authority governing civil courts. TEX. GOV'T CODE ANN. §§ 22.003(b), 22.004(a) (Vernon 2004). Under that authority, the Supreme Court has adopted the Rules of Appellate Procedure to govern appeals. *See* TEX.R.APP. P., 49 TEX. B.J. 558 (Tex.1986). Texas district courts have original jurisdiction in suits affecting the parent-child relationship. *See* TEX. CONST. art. V, § 8; TEX. FAM.CODE ANN. § 101.008 (Vernon 2002).

The Rules of Appellate Procedure restrict and regulate the invocation of the courts of appeals' appellate jurisdiction. "To invoke the jurisdiction of the court of appeals, an instrument must be filed pursuant to" those Rules. *Maxfield v. Terry,* 888 S.W.2d 809, 811 (Tex.1994) (interpreting TEX.R.APP. P. 40(a), 41(a), 49 TEX. B.J. at 565, 566 (repealed 1997) (current versions at TEX.R.APP. P. 25.1, 26.1)). Under the current Rules, that instrument is the notice of appeal. TEX.R.APP. P. 25–26; *In re Arroyo,* 988 S.W.2d 737, 738 (Tex.1998) (orig.proceeding) (per curiam).

A timely "notice of appeal which complies with the requirements of Rule 26 is essential to vest a court of appeals with jurisdiction." *In re A.L.B.,* 56 S.W.3d 651, 652 (Tex.App.-Waco 2001, no pet.) (mem. op.) (per curiam). The Rules of Appellate Procedure provide that in general a notice of appeal of a judgment is timely if filed within thirty days of the signing of the judgment. TEX.R.APP. P. 26.1(a). In an accelerated appeal, however, the notice must be filed within twenty days of signing. *Id.* 26.1(b); *see Hone v. Hanafin,* 104 S.W.3d 884, 886 (Tex.2003). An appeal in a suit to terminate the parent-child relationship is an accelerated appeal. TEX. FAM.CODE ANN. §§ 109.002(a), 263.405(a) (Vernon Supp.2004); *In re S.H.,* 110 S.W.3d 53, 56 (Tex.App.-Waco 2002, order) (per curiam).

In the absence of a timely notice of appeal, a court of appeals lacks jurisdiction over the attempted appeal. *Tex. Rubber Supply, Inc. v. Jetslide Int'l, Inc.,* 466 S.W.2d 279, 280 (Tex.1971); *see Federated Mut. Ins. Co. v. Davenport,* 85 S.W.3d 837, 839 (Tex.App.-Waco 2002, no pet.). "If an appeal is not timely perfected, a court of appeals does not obtain jurisdiction to address the merits of the appeal and can take no action other than to dismiss the appeal." *A.L.B.,* 56 S.W.3d at 652; *accord Phipps v. Stewart,* 572 S.W.2d 796, 797 (Tex.Civ.App.-Waco 1978, no writ) (per curiam); *Greenspan v. Ross,* 949 S.W.2d 45, 45 (Tex.App.-Texarkana 1997, writ denied); *Smith v. State,* 513 S.W.2d 949, 951 (Tex. Civ.App.-Corpus Christi 1974, writ ref'd n.r.e.) (attorney disbarment).

We have applied these rules in termination cases. *See In re B.W.M.,* 129 S.W.3d 709, 709, No. 10–03–318–CV, 2004 WL 177904 at *1,2004 Tex.App. LEXIS 941, at *1 (Tex.App.-Waco Jan. 28, 2004, no pet.) (per curiam); *In re C.M.M.D.,* No. 10–03–206–CV, 2003 WL 21994788 at *1, 2003 Tex.App. LEXIS 7264, at *1–*2 (Tex.App.-Waco Aug. 20, 2003, no pet.) (mem.op.) (per curiam); *A.L.B.,* 56 S.W.3d at 652.

The other courts of appeals have done likewise. *E.g., In re K.N.,* No. 06–03–00097–CV, 2003 WL 22455531 at *1, 2003 Tex.App. LEXIS 9179, at *1–*2 (Tex. App.-Texarkana Oct. 30, 2003, no pet.) (mem.op.); *White v. Tex. Dep't of Protective & Reg. Servs.,* No. 03–03–00224–CV, 2003 WL 22409344 at *1, 2003 Tex.App. LEXIS 8981, at *1–*2 (Tex.App.-Austin Oct. 23, 2003, no pet.) (mem.op.); *In re*

*D.K.P.,* No. 07–03–0356–CV, 2003 WL 22175937 at * 1, 2003 Tex.App. LEXIS 8148, at * 2 (Tex.App.-Amarillo Sept. 17, 2003, no pet.) (mem.op.) (attempted appeal by Attorney General); *In re L.R.R.,* No. 09–03–254–CV, 2003 WL 22103374 at * 1, 2003 Tex.App. LEXIS 7999, at * 1–* 2 (Tex.App.-Beaumont Sept. 11, 2003, no pet.) (mem.op.) (per curiam); *In re A.J.K.,* 116 S.W.3d 165, 172 (Tex.App.-Houston [14th Dist.] 2003, no pet.); *In re R.D.B.,* No. 2–03–130–CV, 2003 WL 21476287 at * 1, 2003 Tex.App. LEXIS 5442, at * 1–* 2 (Tex.App.-Fort Worth June 26, 2003, no pet.) (mem.op.) (per curiam); *In re N.E.,* No. 04–03–00330–CV, 2003 WL 21391557 at * 1, 2003 Tex.App. LEXIS 5053, at * 1–* 2 (Tex.App.-San Antonio June 18, 2003, no pet.) (mem.op.) (per curiam); *In re J.N.W.,* No. 12–03–00142–CV, 2003 WL 21255637 at * 1, 2003 Tex.App. LEXIS 4645, at * 1–* 2 (Tex.App.-Tyler May 30, 2003, no pet.) (mem.op.); *In re J.A.G.,* 92 S.W.3d 539, 540 (Tex.App.-Amarillo 2002, no pet.) (per curiam); *In re T.J.D.W.,* No. 13–02–012–CV, 2002 WL 598506 at * 1, 2002 Tex.App. LEXIS 2778, at * 1–* 2 (Tex.App.-Corpus Christi Apr. 18, 2002, pet. denied) (not designated for publication) (per curiam); *In re S.Y.,* No. 05–01–01903–CV, 2002 WL 538945 at * 1, 2002 Tex.App. LEXIS 2646, at * 1–* 2 (Tex.App.-Dallas Apr. 12, 2002, no pet.) (not designated for publication) (per curiam); *In re E.N.O.,* No. 01–01–00819–CV, 2002 WL 396618 at * 1, 2002 Tex.App. LEXIS 1914, at * 1–* 2 (Tex. App.-Houston [1st Dist.] Mar. 14, 2002, no pet.) (not designated for publication) (per curiam); *see Thompson v. Tex. Dep't of Protective & Reg. Servs.,* 123 S.W.3d 580, 581 (Tex.App.-El Paso 2003, pet. denied).

The Rules of Appellate Procedure do provide for a means of extending the deadline for filing the notice of appeal:

> The appellate court may extend the time to file the notice of appeal if, within 15 days after the deadline for filing the notice of appeal, the party:
>
> (a) files in the trial court the notice of appeal; and
>
> (b) files in the appellate court a motion complying with Rule 10.5(b).

Tex.R.App. P. 26.3; *Hone,* 104 S.W.3d at 886. Rule 10.5(b) governs motions to extend time. Tex.R.App. P. 10.5(b). Apart from this, however, "a court must not . . . alter the time for perfecting an appeal in a civil case." *Id.* 2; *see In re T.W.,* 89 S.W.3d 641, 642 (Tex.App.-Amarillo 2002, no pet.) (op. on orig. submission). "[O]nce the period for granting a motion for extension of time" under the Rules of Appellate Procedure "has passed, a party can no longer invoke the appellate court's jurisdiction." *Verburgt v. Dorner,* 959 S.W.2d 615, 617 (Tex.1997) (interpreting Tex. R.App. P. 41(a)(2), 49 Tex. B.J. at 566 (repealed 1997) (current version at Tex. R.App. P. 26.3)). "Nothing in the Texas Rules of Appellate Procedure provides a remedy for a notice of appeal filed after all deadlines for doing so have expired." *T.W.* at 643 (op. on reh'g).

When a notice of appeal appears untimely, we notify the attempted appellant that the attempted appeal is subject to dismissal for want of jurisdiction, and give the attempted appellant an opportunity to show cause why the appeal should be continued. *See* Tex.R.App. P. 42.3; *In re B.G.,* 104 S.W.3d 565, 567 (Tex.App.-Waco 2002, order) (per curiam).

**I.B. APPLICATION**

The factual timeline in this case is simple. The record properly before us discloses the following. The trial court signed its Order of Termination on September 28, 2001. On November 6, 2001, Brice mailed his motion to extend time for filing his notice of appeal to this Court.

On November 8, 2001, Brice's notice of appeal was filed in the trial court. On November 9, 2001, the Clerk of this Court received Brice's motion to extend time, and the Clerk filed the motion on November 30. On December 28, 2001, we purported to grant Brice's motion, and to extend the time for filing the notice of appeal to November 12.

The application of the legal timeline to these facts is likewise simple. Notice of appeal of the trial court's order would have been timely if filed by October 18, 2001; Brice filed his notice on November 8. A motion to extend time for filing a notice of appeal would have been timely if filed by November 2, 2001; Brice filed his on November 9. Under these facts, Brice's notice of appeal is untimely, and his motion to extend time for filing his notice of appeal was untimely. It thus appears that we lack jurisdiction over Brice's attempted appeal.

The majority notes blandly, "We granted an extension of time to file a notice of appeal, which Brice did." 135 S.W.3d at 140. But we had no power to grant such an extension. We should, now, withdraw that purported extension.

### I.C. CONCLUSION

For these reasons, it appears that the Court lacks jurisdiction over Brice's attempted appeal. Instead of reversing the cause, we should notify the parties that the appeal appears to be subject to dismissal for want of jurisdiction, and give them an opportunity to show cause why the appeal should not be dismissed. Failing that, the attempted appeal should be dismissed for want of jurisdiction. Because the majority fails to do so, I respectfully dissent.

## II. APPOINTMENT OF COUNSEL ON APPEAL

I must also dissent from the majority's disregard of our precedent on the issue of the absence of counsel for Brice on appeal. Under the current statutes, the record does not show that Brice is entitled to an appointed attorney ad litem on appeal. Yet Brice has at least a conditional right to appointed counsel in an appeal of the termination of his parental rights. Whether Brice has an actual right to counsel is a matter for the trial court to determine. Thus, assuming that we have jurisdiction, we should remand the cause to the trial court to determine whether procedural due process requires appointed counsel on appeal. It is especially ironic that the majority would reverse the judgment on the grounds of ineffective assistance by Brice's statutorily appointed attorney ad litem at trial, without giving any consideration to the conditional due-process requirement of counsel on appeal.

### II. A. LEGAL BACKGROUND

The requirement of appointed counsel in suits to terminate parental rights flows from both constitutional and statutory grounds. Since 1983, the Texas Family Code has clearly provided for the mandatory appointment of an attorney ad litem for indigent parents in termination suits in certain circumstances.[1] *See* Act of May 26, 1983, 68th Leg., R.S., ch. 298, § 1, 1983

---

1. The Seventy–Eighth Legislature promulgated a definition of "attorney ad litem" for suits affecting the parent-child relationship: " 'Attorney ad litem' means an attorney who provides legal services to a person, including a child, and who owes to the person the duties of undivided loyalty, confidentiality, and competent representation." *See* Tex. Fam.Code Ann. § 107.001(2) (Vernon Supp.2004). Since that change in law applies only to suits filed on or after September 1, 2003, it does not specifically govern this cause, in which the termination petition was filed in 2001. *See* Act of May 27, 2003, 78th Leg., R.S., ch. 262, §§ 2–3, 2003 Tex. Gen. Laws 1173, 1183.

Tex. Gen. Laws 1554, 1554 (repealed 1995) (current version at TEX. FAM.CODE ANN. § 107.013(a) (Vernon Supp.2004)). The Family Code now provides:

> In a suit . . . in which termination of the parent-child relationship is requested, the court shall appoint an attorney ad litem to represent the interests of . . . an indigent parent of the child who responds in opposition to the termination. . . .

TEX. FAM.CODE ANN. § 107.013(a).[2]

Although this statute does not expressly address the appointment of an attorney ad litem on appeal of a judgment of termination, we have held that the statutory requirement extends to the appellate level. *In re T.V.*, 8 S.W.3d 448, 449 (Tex.App.-Waco 1999, order); *see also In re E.L.Y.*, 69 S.W.3d 838, 841 (Tex.App.-Waco 2002, order) (per curiam).

The Texas Legislature, however, has effectively abrogated that holding. At the time of our order in *T.V.*, the Family Code did not expressly address the appointment of an attorney ad litem on appeal, and our opinion filled the gap. But in 2001, the Legislature enacted a specific statute governing the appointment of attorneys ad litem on appeal in termination cases. *See* TEX. FAM.CODE ANN. § 263.405 (Vernon 2002). Now, as part of the procedures for the appeal of a final order terminating the parent-child relationship, the Family Code expressly provides for procedures for the appointment of an attorney ad litem on appeal:

> If a party claims indigency and requests the appointment of an attorney, the court shall require the person to file an affidavit of indigency and shall hear evidence to determine the issue of indigency. If the court does not render a written order denying the claim of indigence or requiring the person to pay partial costs before the 36th day after the date the final order being appealed is signed, the court shall consider the person to be indigent and shall appoint counsel to represent the person.

*Id.* § 263.405(e).

It is a "traditional statutory construction principle that the more specific statute controls over the more general." *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 901 (Tex.2000); *accord Columbia Hosp. Corp. v. Moore*, 92 S.W.3d 470, 473 (Tex.2002). The specific Section 263.405(e) controls over the general Section 107.013(a), and effectively abrogates our statutory interpretation in *T.V.*

The record does not show that Brice requested the appointment of an attorney ad litem or otherwise satisfied the statutory prerequisites for such an appointment on appeal. In the absence of these prerequisites, it cannot be said that Brice has invoked a statutory right to an appointed attorney ad litem in this appeal.

However, our holding in *T.V.* that appointed counsel was required on appeal was not based solely on statutory grounds; it was also based on constitutional grounds. To the extent that the requirement is based on constitutional grounds, of course, our holding in *T.V.* is not affected by the enactment of Section 263.405. A parent whose parental rights have been terminated has a conditional, constitutional right to appointed counsel on appeal. Whether those conditions are satisfied must be determined by the trial court, and

---

**2.** For suits filed on or after September 1, 2003, this statute only requires the appointment of an attorney ad litem in suits filed by a governmental entity. *See* TEX. FAM.CODE ANN. § 107.013(a); Act of May 27, 2003, 78th Leg., R.S., ch. 262, §§ 2–3, 2003 Tex. Gen. Laws at 1183.

this case should be abated for that determination.

The United States Supreme Court has held that parents threatened with the loss of their parental rights have no per-se constitutional right to appointed counsel. *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 26–27, 31–32, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); *see B.L.D.*, 113 S.W.3d at 354. That Court sets out a balancing test for determining whether Fourteenth–Amendment procedural due process requires the appointment of counsel. *Lassiter* at 27–30, 101 S.Ct. 2153. The Court summarizes the factors to be weighed as follows:

> the parent's interest is an extremely important one (and may be supplemented by the dangers of criminal liability inherent in some termination proceedings); the State shares with the parent an interest in a correct decision, has a relatively weak pecuniary interest, and, in some but not all cases, has a possibly stronger interest in informal procedures; and the complexity of the proceeding and the incapacity of the uncounseled parent could be, but would not always be, great enough to make the risk of an erroneous deprivation of the parent's rights insupportably high.

*Id.* at 31, 101 S.Ct. 2153; *accord In re J.F.C.*, 96 S.W.3d 256, 272–73 (Tex.2002); *see In re M.S.*, 115 S.W.3d 534, 547–49 (Tex.2003). The "dispositive question" is whether these factors,

> when weighed against the presumption that there is no right to appointed counsel in the absence of at least a potential deprivation of physical liberty, suffice to rebut that presumption and thus lead to the conclusion that the Due Process Clause requires the appointment of counsel when a State seeks to terminate an indigent's parental status.

*Lassiter* at 31, 101 S.Ct. 2153. This question is "to be answered in the first instance by the trial court, subject, of course, to appellate review." *Id.* at 32, 101 S.Ct. 2153.

Apart from these due-process concerns, we have held that matters concerning the appointment of counsel on appeal lie in the trial court as a matter of state law. "[B]ecause court-appointed attorneys are paid from county funds, decisions regarding the appointment and substitution of court-appointed appellate counsel should be made at the local level." *E.L.Y.*, 69 S.W.3d at 842; *see* Tex. Fam.Code Ann. § 107.015(c) (Vernon Supp.2004); *see also Sowels v. State*, 45 S.W.3d 690, 692 (Tex.App.-Waco 2001, no pet.) (court of appeals does not have authority to grant appointed counsel's motion to withdraw in criminal cases); Tex. Disciplinary R. Prof'l Conduct 1.15 cmt. 3, *reprinted in* Tex. Gov't Code Ann., tit. 2, subtit. G app. A (Vernon 1998) (Tex. State Bar R. art. X, § 9) (withdrawal of appointed attorney "ordinarily requires approval of the appointing authority or presiding judge").

We have also considered the problem of abandonment, when counsel, either appointed or retained, fails to prosecute an appeal on behalf of a party, or at least to advise the party of the right to appeal. *See* Tex.R.App. P. 38.8; *Jones v. State*, 98 S.W.3d 700, 703 (Tex.Crim.App.2003) (attorney's duty to advise criminal defendant of right to appeal); Tex. Disciplinary R. Prof'l Conduct 1.02 cmt. 6 ("[T]he lawyer should advise the client of the possibility of appeal before relinquishing responsibility for the matter."); *see also* Restatement (Third) of the Law Governing Lawyers § 33(1) & cmt. b (2000). In the context of termination appeals, we have, as in criminal appeals, remanded for a hearing to determine whether counsel was effectively representing the client on appeal. *See*

TEX.R.APP. P. 38.8(b)(2); *e.g., Hendrix v. State,* 86 S.W.3d 762 (Tex.App.-Waco 2002, no pet.) (mem.op.) (per curiam). For example, in *In the Interest of A.F.,* we abated and remanded for the trial court to determine whether a conflict of interest existed where the trial court had appointed one attorney to represent both parents on appeal, and to remedy any conflict. *In re A.F.,* 51 S.W.3d 848, 849 (Tex.App.-Waco 2001, order) (per curiam). In *T.V.,* again, we abated with instructions for the trial court to determine why a parent's appointed appellate counsel had not timely filed a brief, and to take appropriate action. *T.V.,* 8 S.W.3d at 449–50.

Likewise, in the absence of a limitation on the scope of appointed counsel's representation in the appointment order, or an order granting appointed counsel's motion to withdraw, we assume that counsel has a continuing obligation to represent a client until the client no longer desires an appointed attorney to appeal the matter. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.02 & cmts. 4, 6; *cf. Jones,* 98 S.W.3d at 703. When it is not clear whether appointed trial counsel continues to represent the client on appeal, we should abate and remand to the trial court for a determination of that matter. *See In re B.T.B.,* No. 10-03-173-CV, slip op. at 3 (Tex.App.-Waco Feb. 11, 2004, abatement order) (not designated for publication).

## II. B. APPLICATION

If we had jurisdiction in this attempted appeal, we would be bound to abate the cause and remand it to the trial court. The record does not show that Brice's appointed trial attorney ad litem has withdrawn from representing Brice. Brice may thus be represented by counsel. Brice has prosecuted this appeal pro se. He may thus have intended to waive appointed counsel on appeal. But the record certainly does not show that, either. If Brice wants appointed counsel, then he may be entitled to it. It is for the trial court to determine these matters.

## II. C. CONCLUSION

In light of our precedents, assuming we have jurisdiction, two courses are open to us. First, we may follow our precedents: we may abate the appeal for a determination by the trial court of whether Brice is represented by counsel; if Brice is not represented, whether he wants appointed counsel; if Brice wants counsel, whether he is indigent; and, if Brice is indigent, whether procedural due process requires the appointment of counsel in this appeal. The only other course open to us is to overrule *T.V.* expressly. Because the majority does neither, I respectfully dissent.

## III. EFFECTIVE ASSISTANCE OF COUNSEL

Lastly, the majority clearly errs in holding that Brice establishes that his appointed attorney at litem did not render effective assistance of counsel at trial. The overriding obstacle to establishing ineffective assistance of counsel is the strong presumption that counsel rendered effective assistance, which can be overcome only by a record affirmatively demonstrating the contrary. The record certainly does not show that Brice's attorney ad litem did render reasonably effective assistance. If the record showed, as the majority concludes, that Brice's attorney failed even to contact him, not to mention other alleged failings, then the circumstances in which we would not find that the attorney rendered deficient performance would be very few. But the record does not affirmatively establish counsel's actions or inaction, much less the reasons therefor. Moreover, the majority fails to undertake any significant prejudice analysis, a neces-

sary part of the ineffective-assistance analysis.

## III.  A.  Legal Background

The Texas Supreme Court has held that Texas's statutory right to an appointed attorney ad litem in suits for the termination of the parent-child relationship "embodies the right to effective counsel."[3] *M.S.*, 115 S.W.3d at 544. That Court adopted as the standard for evaluating effective assistance in termination suits the standard established by the United States Supreme Court for criminal cases in *Strickland v. Washington*. *M.S.*, 115 S.W.3d at 545; *see Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In interpreting the *Strickland* standard, the Texas Supreme Court closely follows the Texas Court of Criminal Appeals' application of the standard in criminal cases.[4] *See M.S.*, 115

---

3.  I note that the Legislature's prospective definition of the duties of appointed attorneys ad litem in suits affecting the parent-child relationship may have already abrogated the Supreme Court's analysis. *See* Tex. Fam.Code Ann. § 107.001(2); *supra*, 135 S.W.3d at 146 n. 1 (dissenting op.). I discuss this matter briefly, since the Court decides this case, as the Supreme Court decided *M.S.*, under prior law.

In 2002, the Texas Court of Criminal Appeals reiterated its holding that the statutory right to "competent" appointed counsel in proceedings on writs of habeas corpus in capital cases does not implicate the requirement of the "effective" assistance of counsel. *Ex parte Graves*, 70 S.W.3d 103, 113–16 (Tex. Crim.App.2002) (interpreting Tex.Code Crim. Proc. Ann. art. 11.071, § 2(a), (c) (Vernon Supp.2004)); *see also Graves v. Cockrell*, 351 F.3d 143, 156 (5th Cir.2003) (habeas appeal), *pet. denied*, 124 S.Ct. 2160 (2004); *Graves v. Dretke*, —— U.S.L.W. —— (U.S. Jan. 31, 2004) (No. 03–8778), U.S. Sup.Ct., Docket, http://www.supremecourtus.gov/docket/03–8778.htm (last visited Mar. 4, 2004). The Court of Criminal Appeals held that the reference to "competent counsel" concerns, rather, "the initial appointment of counsel," including "counsel's qualifications, experience, and abilities at the time of his appointment," and concerns "continuity of representation." *Graves*, 70 S.W.3d at 114 (citing *Ex parte Mines*, 26 S.W.3d 910, 912 (Tex.Crim.App. 2000)). Thus, unlike *Strickland's* focus on the "result of the proceeding," *see Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, the competence of counsel does not regard "the final product of representation," *see Graves*, 70 S.W.3d at 114. In 2003, the Legislature enacted the Family Code definition of "attorney ad litem," including the duty of "competent representation" to the client.

*See* Tex. Fam.Code Ann. § 107.001(2). In the same session, the Legislature acceded to the Court of Criminal Appeals' interpretation of Article 11.071 by not amending Section 2's references to "competent counsel" or otherwise abrogating the Court of Criminal Appeals' interpretation. Later that year, the Supreme Court decided *M.S. M.S.*, 115 S.W.3d 534. Of course, in *M.S.*, the Court was interpreting the law prior to the statutory adoption of the "competent representation" standard. *See id.* at 535 (parent-child relationship terminated in 2000). However, the Legislature's prospective definition of the duties of an attorney ad litem to include "competent" representation may have been intended to adopt the Court of Criminal Appeals' interpretation.

Moreover, the Court of Criminal Appeals' interpretation of "competent counsel" is in accord with the general understanding of competence in civil cases. The Texas Disciplinary Rules of Professional Conduct define "competent" as "denot[ing] possession [of] or the ability to timely acquire the legal knowledge, skill, and training reasonably necessary for the representation of the client." *See* Tex. Disciplinary R. Prof'l Conduct terminology; *see also id.* R. 1.01 & cmts.; *e.g., Liebbe v. Floyd*, No. 05–97–01272–CV, 1999 WL 993853 at * 4, 1999 Tex.App. LEXIS 8178, at * 12 & n. 4 (Tex.App.-Dallas Nov. 2, 1999, pet. denied) (not designated for publication). In amending the Family Code, the Legislature may have had the Disciplinary Rules' understanding of competence, as qualification, in mind as well.

4.  A majority of this Court has been more liberal than the Court of Criminal Appeals in finding ineffective assistance of counsel. *See, e.g., Jaubert v. State*, 65 S.W.3d 73, 82 (Tex. App.-Waco 2000), *rev'd*, 74 S.W.3d 1 (Tex. Crim.App.), *cert. denied*, 537 U.S. 1005, 123

S.W.3d at 545 & nn., 549–50 & nn. (citing, *e.g., Thompson v. State,* 9 S.W.3d 808, 812–13 (Tex.Crim.App.1999)) ("[O]ur appellate courts must engage in a review using the established *Strickland* standards.").

The *Strickland* standard has two prongs: performance and prejudice. First, in order to establish an ineffective-assistance claim, a party must show that its "counsel's performance was deficient." *M.S.,* 115 S.W.3d at 545 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052); *Wiggins v. Smith,* 539 U.S. 510, ——, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). Generally, "[t]his requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed" to the party. *See M.S.,* 115 S.W.3d at 545 (quoting *Strickland* at 687, 104 S.Ct. 2052). Also, the party "must show that the deficient performance prejudiced" the party's case. *See id.* (quoting *Strickland* at 687, 104 S.Ct. 2052); *accord Yarborough v. Gentry,* 540 U.S. 1, ——, 124 S.Ct. 1, 4, 157 L.Ed.2d 1 (2003). This, in turn, generally "requires showing that counsel's errors were so serious as to deprive" the party "of a fair trial," that is, "a trial whose result is reliable." *See M.S.,* 115 S.W.3d at 545 (quoting *Strickland* at 687, 104 S.Ct. 2052); *Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). In order to establish an ineffective-assistance claim, the party "must successfully show both prongs of the inquiry." *M.S.,* 115 S.W.3d at 545; *see Strickland* at 697, 104 S.Ct. 2052; *Bell v. Cone,* 535 U.S. 685, 695, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); *Tong v. State,* 25 S.W.3d 707, 712 (Tex.Crim.App.2000).

The *Strickland* standard places a heavy burden on ineffective-assistance claimants. *Banda v. State,* 890 S.W.2d 42, 59 (Tex. Crim.App.1994). "Many significant errors

... will not meet this 'highly demanding' standard." *Lockhart,* 506 U.S. at 378, 113 S.Ct. 838 (Stevens, J., dissenting) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 381–82, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)). In the termination context, this "high burden" is intentional. *See M.S.,* 115 S.W.3d at 545 (quoting *L.W. v. Dep't of Child. & Fams.,* 812 So.2d 551, 556 (Fla. Dist.Ct.App.2002), [*overruled by S.B. v. Dep't of Child. & Fams.,* 851 So.2d 689 (Fla.2003) ] ).

Specifically, the performance prong "primarily focus[es] on whether counsel performed in a 'reasonably effective' manner." *M.S.,* 115 S.W.3d at 545 (quoting *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052); *accord Roe v. Flores–Ortega,* 528 U.S. 470, 476, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000) (quoting *Strickland* at 687, 104 S.Ct. 2052); *Garcia v. State,* 57 S.W.3d 436, 440 (Tex. Crim.App.2001). Attorney performance is judged against an "objective standard of reasonableness." *Strickland* at 688, 104 S.Ct. 2052; *accord Yarborough,* 540 U.S. at ——, 124 S.Ct. at 4; *Aldrich v. State,* 104 S.W.3d 890, 896 (Tex.Crim.App.2003). This objective standard is "simply reasonableness under prevailing professional norms." *Strickland* at 688, 104 S.Ct. 2052; *accord Yarborough,* 540 U.S. at ——, 124 S.Ct. at 4; *Mathis v. State,* 67 S.W.3d 918, 927 (Tex.Crim.App.2002). The relevant professional standards are those of the time, place, and manner of the representation. *See Wiggins,* 539 U.S. at ——, 123 S.Ct. at 2536. In a termination suit, then, the relevant standards should be those for civil lawyers generally, and, to the extent that there are any specific standards for lawyers practicing family law, to those standards as well, at the time of the representation. *See, e.g.,* Thomas L. Ausley et al., *Ethical Traps in the Family Law*

S.Ct. 495, 154 L.Ed.2d 403 (2002); *Phillips v. State,* 964 S.W.2d 735, 737 (Tex.App.-Waco 1998), *rev'd,* 992 S.W.2d 491 (Tex.Crim.App. 1999).

*Practice: Avoiding Land Mines, in* 3 STATE BAR OF TEX. PROF. DEV. PROGRAM, ADVANCED FAMILY LAW COURSE RRR (1998); Jack W. Marr, *How to Play Your Hand When the Cards are Stacked Against You: Bad Facts in SAPCR Cases (Substance Abuse, Family Violence, Battered Women's Syndrome, and Parental Alienation), in* 3 TEX. BAR CLE, ADVANCED FAMILY LAW COURSE 58 (2001); 23 WILLIAM V. DORSANEO III & JOSEPH W. McKNIGHT, TEXAS LITIGATION GUIDE § 381.52 (2003) (checklist for responding to petition for termination of parental rights); *see generally* TEX. DISCIPLINARY R. PROF'L CONDUCT; RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (2000 & Supp.2003); *cf.* TEX. FAM.CODE ANN. § 107.004(6)(A) (Vernon Supp.2004) (mandating that attorneys ad litem representing children be familiar with standards promulgated by American Bar Association) (*i.e.,* STANDARDS OF PRACTICE FOR LAWYERS WHO REPRESENT CHILDREN IN ABUSE AND NEGLECT CASES (Ctr. on Children & the Law, Am. Bar Ass'n, 1996), http://www.abanet.org/child/repstandwhole.pdf (last visited Feb. 7, 2004));[5] NAT'L COUNCIL OF JUV. & FAMILY COURT JUDGES, Resource Guidelines, *Improving Court Practice in Child Abuse & Neglect Cases* 22–23 (1995), http://www.pppncjfcj.org/pdf/Resource__guide/resguide.pdf (last visited Feb. 13, 2004); STANDARDS FOR ATTORNEYS AND GUARDIANS AD LITEM IN CUSTODY AND VISITATION PROCEEDINGS (Am. Acad. of Matrimonial Lawyers, 1994), 13 J. AM. ACAD. MATRIMONIAL LAW. 1 (1995). For instance, the Supreme Court notes that

the requirement of the preservation of a factual-sufficiency issue by a motion for new trial "is something that competent trial counsel in Texas should know." *M.S.,* 115 S.W.3d at 549; *see* TEX.R. CIV. P. 324(b)(2). "[C]ounsel's performance falls below acceptable levels of performance when the 'representation is so grossly deficient as to render proceedings fundamentally unfair[.]'" *M.S.,* 115 S.W.3d at 545 (quoting *Brewer v. State,* 649 S.W.2d 628, 630 (Tex.Crim.App.1983)).

In turn, the *Strickland* analysis's prejudice prong requires "a review to determine whether counsel's defective performance caused harm." *M.S.,* 115 S.W.3d at 549–50; *accord Yarborough,* 540 U.S. at ——, 124 S.Ct. at 4; *Strickland,* 466 U.S. at 687, 104 S.Ct. 2052; *see also* TEX.R.APP. P. 44.1(a)(1). Counsel's performance is prejudicial only when "there is a reasonable probability that, but for counsel's unprofessional error(s), the result of the proceeding would have been different." *M.S.,* 115 S.W.3d at 550 (quoting *Garcia,* 57 S.W.3d at 440); *accord Wiggins,* 539 U.S. at ——, 123 S.Ct. at 2542 (quoting *Strickland* at 694, 104 S.Ct. 2052). A "reasonable probability" is one "sufficient to undermine confidence in the outcome" of the proceeding. *Wiggins,* 539 U.S. at ——, 123 S.Ct. at 2542 (quoting *Strickland* at 694, 104 S.Ct. 2052); *Rylander v. State,* 101 S.W.3d 107, 110 (Tex.Crim.App.2003). It is not sufficient to show merely that "the errors had some conceivable effect on the outcome of the proceeding." *Williams v. Taylor,* 529 U.S. 362, 394, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (quoting

**5.** Effective September 1, 2003, attorneys ad litem representing children must also be familiar with the National Association of Counsel for Children's suggested amendments to the ABA Standards. *See* TEX. FAM.CODE ANN. § 107.004(6)(B) (Vernon Supp.2004); *see* STANDARDS OF PRACTICE FOR LAWYERS WHO REPRESENT CHILDREN IN ABUSE AND NEGLECT CASES (Nat'l Ass'n of Counsel for Children, 1999), http://

www. naccchildlaw.org/documents/abastandardsnaccrevised.doc (last visited Feb. 7, 2004); *see also* amended STANDARDS OF PRACTICE FOR LAWYERS REPRESENTING CHILDREN IN CUSTODY CASES (Section of Family Law, Am. Bar Ass'n, 2003), http://www.sbotfam.org/StandardsPracticeRepChildrenChildCustody.pdf (last visited Feb. 17, 2004).

*Strickland* at 693, 104 S.Ct. 2052); *see Ex parte Varelas,* 45 S.W.3d 627, 629 (Tex. Crim.App.2001) (op. on orig. submission). "[V]irtually every act or omission of counsel would meet that test." *Williams* at 394, 120 S.Ct. 1495 (quoting *Strickland* at 693, 104 S.Ct. 2052). Rather, the appellant must show that counsel's errors "actually had an adverse effect" on the case. *Roe,* 528 U.S. at 482, 120 S.Ct. 1029 (quoting *Strickland* at 693, 104 S.Ct. 2052).

Courts have applied this principle in suits affecting the parent-child relationship as well as in criminal cases. For instance, in a criminal appeal, where counsel unreasonably fails to file a brief on appeal, the appellant can only show prejudice by showing a reasonable probability that he or she would have prevailed had counsel filed a brief. *Smith v. Robbins,* 528 U.S. 259, 285, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000). Similarly, in a termination suit, the Texas Supreme Court has held that the "unjustifiabl[e]" failure to preserve factual-insufficiency issues for appeal is not prejudicial unless the evidence is, in fact, factually insufficient, so that the judgment would have been reversed but for counsel's failure. *See M.S.,* 115 S.W.3d at 550. The Texas courts of appeals have held likewise. For example, in *In the Interest of J.W.,* the Dallas Court held that the appellant did not establish that counsel rendered ineffective assistance, since the appellant could not establish that counsel's conduct had any effect on the outcome of the proceeding. *In re J.W.,* 113 S.W.3d 605, 616 (Tex. App.-Dallas 2003, pet. denied). That is, the record did not show that counsel rendered ineffective assistance:

- in not objecting to certain evidence, where the court held that the evidence was admissible, *id.* at 612, 616;
- in not objecting to the charge, where the court held that the charge was not erroneous, *id.* at 612–13, 616; and

- in not developing alternative explanations of the child's medical problems, where the court held that the evidence was sufficient regardless of evidence of the child's medical problems, *id.* at 614–15, 616.

Procedurally, the ineffective-assistance analysis rests on two principles: deference to trial counsel and respect for the record. First, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052; *accord Bone v. State,* 77 S.W.3d 828, 833 (Tex.Crim.App.2002); *Ingham v. State,* 679 S.W.2d 503, 508 (Tex.Crim.App.1984); *see Yarborough,* 540 U.S. at ——, 124 S.Ct. at 4. "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland* at 689, 104 S.Ct. 2052; *Yarborough,* 540 U.S. at ——, 124 S.Ct. at 4. For this reason,

[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. . . .

*Strickland* at 689, 104 S.Ct. 2052; *accord M.S.,* 115 S.W.3d at 549. Otherwise, representation will be reduced to jumping through specific hoops to avoid being found ineffective, rather than effectively advocating the client's case. *Strickland* at 689–90, 104 S.Ct. 2052; *Wiggins,* 539 U.S. at ——, 123 S.Ct. at 2535 (Supreme Court has "declined to articulate specific guidelines for appropriate attorney conduct.").

The other procedural principle of the analysis is that the presumption of effective assistance can only be overcome by an affirmative record. The United States Supreme Court has recently reiterated the importance of an adequate record in ineffective-assistance cases. *See Massaro v. United States*, 538 U.S. 500, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003). In order for ineffective-assistance claims to be evaluated fairly, the record must show what counsel's performance comprised, and the reasons for it. Otherwise,

> [i]f the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them. . . . Without additional factual development, moreover, an appellate court may not be able to ascertain whether the alleged error was prejudicial.

*Id.*, 538 U.S. at ——, 123 S.Ct. at 1694 (internal citations omitted). Since the evidence offered at trial pertains to the issues of the cause of action on trial, and not to the assistance of counsel, "the resulting record in many cases will not disclose the facts necessary to decide either prong of the *Strickland* analysis." *Id.*

The Texas Supreme Court, likewise, in adopting the *Strickland* standard for the analysis of ineffective-assistance claims in termination suits, noted that "any appellate court . . . may only consider the record presented to it, and . . . cannot speculate on what might or might not be in the missing portions of the record." *M.S.*, 115 S.W.3d at 546.

The Court of Criminal Appeals has thoroughly fleshed out the requirement that ineffective assistance be "firmly founded in the record." *Bone*, 77 S.W.3d at 835; *Hawkins v. State*, 660 S.W.2d 65, 75 (Tex. Crim.App.1983) (op. on orig. submission). As that Court has said, "[r]arely will a reviewing court be provided the opportunity to make its determination on direct appeal with a record capable of providing a fair evaluation of the merits of the claim involving such a serious allegation" as ineffective assistance. *Thompson*, 9 S.W.3d at 813; *accord Freeman v. State*, 125 S.W.3d 505, 506–06, 2003 Tex.Crim.App. LEXIS 711, at *2–*3 (Tex.Crim.App. Nov. 5, 2003). By this "firmly-founded" standard, where "the record is silent as to why appellant's counsel took or failed to take . . . actions" at trial, the appellant does not overcome the presumption that counsel rendered effective assistance. *Rylander*, 101 S.W.3d at 111.

Like the performance prong, "[t]he question of prejudice turns on the facts that the record shows." *Mitchell v. State*, 68 S.W.3d 640, 643 (Tex.Crim.App.2002). "Ineffective assistance of counsel claims are not built on retrospective speculation." *Bone*, 77 S.W.3d at 835. If an ineffective-assistance claim is derived from speculation, rather than being grounded in the record, the claim can always be defeated. For instance, if the issue is counsel's decision not to present more mitigating evidence, "[i]f a reviewing court can speculate about the existence of further mitigating evidence, then it just as logically might speculate about the existence of further aggravating evidence." *Id.* Without a thoroughly developed record, the court does not know whether any further mitigating evidence existed; nor does the court know whether, had the defendant presented further mitigating evidence (if any existed), the State would have chosen

to respond by presenting still more aggravating evidence, or, indeed, whether any such further aggravating evidence existed. Moreover, when an appellant first raises ineffective-assistance concerns on appeal, "trial counsel has not had an opportunity to respond to these areas of concern." *Rylander*, 101 S.W.3d at 110.

In termination suits, in particular, Texas courts of appeals considering the *Strickland* standard have honored *Strickland's* record requirement.[6] "An allegation of ineffective assistance must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *In re S.R.C.*, No. 2–02–426–CV, 2003 WL 22966325 at *2, 2003 Tex.App. LEXIS 10624, at *8 (Tex.App.-Fort Worth Dec. 18, 2003, no pet.) (mem.op.); *In re K.L.*, 91 S.W.3d 1, 14 (Tex.App.-Fort Worth 2002, no pet.); *accord In re A.J.H.*, No. 14–03–01016–CV, 2004 WL 414093 at *6–7, 2004 Tex.App. LEXIS 1969, at *20–*22 (Tex.App.-Houston [14th Dist.] Mar. 2, 2004, no pet.) (mem.op.); *J.W.*, 113 S.W.3d at 616; *In re J.M.S.*, 43 S.W.3d 60, 64 (Tex.App.-Houston [1st Dist.] 2001, no pet.); *In re M.S.*, 73 S.W.3d 537, 542 (Tex. App.-Beaumont 2002), *rev'd on other grounds*, 115 S.W.3d 534; *e.g., In re S.G.S.*, No. 09–02–062–CV, 130 S.W.3d 223, 228, 2003 WL 23189479 at *2–3, 2004 Tex. App. LEXIS 583, at *6 (Tex.App.-Beaumont Jan. 22, 2004, no pet. h.). Thus, in

*In the Interest of E.L.T.*, the Fourteenth Court held that an appellant failed to establish that she received ineffective assistance by virtue of her alleged incompetence at the time of trial, where the record did not show that the appellant's alleged incompetence either affected counsel's performance or affected the outcome of the trial. *In re E.L.T.*, 93 S.W.3d 372, 376 (Tex.App.-Houston [14th Dist.] 2002, no pet.). Likewise, in *In the Interest of I.V.*, the Corpus Christi Court held that the appellant did not establish ineffective assistance in counsel's alleged failure to obtain the appellant's written testimony, where the record did not show whether counsel did or did not obtain the testimony, much less counsel's reasons for that action. *In re I.V.*, 61 S.W.3d 789, 799 (Tex.App.-Corpus Christi 2001, no pet.). Similarly, in *J.W.*, the Dallas Court held that the appellant did not establish that counsel rendered ineffective assistance, since the record did not show the reasons for counsel's not objecting to certain evidence, not objecting to the charge, and not attempting to develop alternative explanations for the child's medical problems. *J.W.* at 616.

The highest courts of several states, likewise, have emphasized the importance of the record in evaluating ineffective-assistance claims in termination suits. *See*

---

**6.** At least one court has noted the difficulty of creating a record of ineffective assistance in civil cases. *See In re M.R.E.*, No. 14–01–00525–CV, 2002 WL 246404 at *1–2, 2002 Tex.App. LEXIS 1323, at *4 n. 5 (Tex.App.-Houston [14th Dist.] Feb. 21, 2002, no pet.) (not designated for publication). In principle, the record might be expanded by a motion for new trial. *In re J.M.S.*, 43 S.W.3d 60, 64 (Tex.App.-Houston [1st Dist.] 2001, no pet.). But the difficulty of creating an ineffective-assistance record at a hearing on a motion for new trial in a termination trial is at least as great as in criminal cases, where that method is not favored. *See Aldrich*, 104 S.W.3d at

896; *Ex parte Torres*, 943 S.W.2d 469, 475 (Tex.Crim.App.1997). A hearing on a writ of habeas corpus is a preferable forum for developing a record of ineffective assistance. *Massaro*, 538 U.S. at 505, 123 S.Ct. at 1694; *accord Freeman*, 125 S.W.3d at 507–08, 2003 Tex.Crim.App. LEXIS 711, at *6. Termination judgments, however, unlike judgments in criminal cases, are not subject to collateral attack after six months after the signing of the judgment. Tex. Fam.Code Ann. § 161.211(a)-(b) (Vernon 2002). The importance of timeliness in challenging termination judgments thus cannot be overstated.

*In re Troy Z.*, 3 Cal.4th 1170, 13 Cal. Rptr.2d 724, 840 P.2d 266, 273 n. 12 (1992); *In re Jonathan M.*, 255 Conn. 208, 764 A.2d 739, 754 (2001); *In re Alexander V.*, 223 Conn. 557, 613 A.2d 780, 788 (1992) ("[W]e are, as an appellate court, limited to the record presented to us in deciding the merits of an appeal."); *In re J.M.H.*, 1997 ND 99, ¶ 21, 564 N.W.2d 623, 627–28 (1997); *State ex rel. M.M.*, 2003 UT 54, ¶ 13, 82 P.3d 1104, 1106 (Utah 2003); *In re M.B.*, 162 Vt. 229, 647 A.2d 1001, 1003 n. 3 (1994); *e.g., Davis v. Div. of Family Servs.*, 788 A.2d 527, 527 (Del.Supr.2001) (order); *In re M.T.P.*, 101 Idaho 280, 611 P.2d 1065, 1066–67 (1980); *In re D.W.*, 385 N.W.2d 570, 583 (Iowa 1986); *see also In re C.D.M.*, 888 S.W.2d 725, 728 (Mo.Ct. App.1994); *In re J.C.*, 781 S.W.2d 226, 228 (Mo.Ct.App.1989); *Stephens v. State ex rel. Dep't of Human Servs.*, 2002 OK CIV APP 90, ¶ 22–23, 56 P.3d 381, 385 (Okla. Civ.App.2002).

### III. B. APPLICATION

The majority's analysis largely ignores the record requirement, and effectively ignores the prejudice prong entirely.

A majority of this Court has expressed its desire "in termination cases to 'extend' and harmonize with criminal jurisprudence." *See In re B.L.D.*, 56 S.W.3d 203, 211 (Tex.App.-Waco 2001) (per curiam), *rev'd*, 113 S.W.3d 340; *In re A.V.*, 57 S.W.3d 51, 57 (Tex.App.-Waco 2001), *rev'd*, 113 S.W.3d 355 (Tex.2003). Here, the Texas Supreme Court has suggested that the United States Supreme Court's and the Texas Court of Criminal Appeals' cases interpreting the Sixth Amendment right to counsel elucidate the proper standard of effective representation by statutorily appointed attorneys ad litem in termination cases. *See M.S.*, 115 S.W.3d at 545. But the majority here disregards those criminal cases.

### 1. Performance

In its analysis of the performance prong, the majority confidently states:

> The trial court appointed Brice's attorney ad litem on the day of the final hearing. Nothing in the record suggests that Brice's appointed counsel requested a continuance from the trial court. The appointed attorney had no opportunity to meet with or consult her client, who was in prison, and she apparently requested none. The record further shows that counsel's preparation for this hearing was to review Brice's "criminal history."

135 S.W.3d at 144–45. The record, however, does not show any of these things, except that Brice was in prison. The very language of the majority opinion demonstrates that the record does not support it. Phrases such as "[n]othing in the record suggests" and "[a]pparently" indicate that the majority has not observed the requirement that the allegations of ineffective assistance be firmly founded in the record. Rather, not finding support in the record for its findings, the majority speculates. But we cannot draw conclusions from a silent record or from the absence of a record.

First, the majority accepts Brice's premise that counsel was appointed immediately before the bench trial, and did not attempt to confer with Brice. In this connection, Brice points in the record only to the following: at the beginning of the trial, the court addressed Brice's counsel, "I've appointed you to represent the biological father." This statement will hardly bear the weight that Brice and the majority would put on it. Indeed, to the extent that the record shows anything, it affirmatively refutes this contention. At trial, counsel stated, "I've reviewed my client Mr. Brice's criminal history." If correct, such

would hardly be possible if counsel had been appointed, as Brice argues, immediately before trial.[7]

The majority further states that "[t]he record ... shows that counsel's preparation for this hearing was to review Brice's 'criminal history.'" 135 S.W.3d at 142. I understand this statement to mean that her preparation consisted solely in reviewing Brice's criminal history. Again, the majority follows Brice's argument, but the record does not support that interpretation. Counsel did state at trial, "I've reviewed my client Mr. Brice's criminal history." This hardly demonstrates that counsel made no other preparations.

The majority also states that "Brice's appointed counsel adduced evidence that Brice had been 'arrested for numerous things including harassment and stalking and several indecency [sic] with a child and indecent exposure, DWI.'" 135 S.W.3d at 142 (alteration in original). This is unequivocally false. Brice himself phrases his argument in these terms: that his attorney asked "questions that would be asked by [Denton's] counsel not by an attorney ad litem defending" Brice's case. In cross-examining Denton, Brice's attorney did thus summarize the evidence of Brice's course of criminal conduct that had come out on direct examination. Brice's attorney went on to elicit testimony that Brice's incarceration had caused his limited visitation with the children and his inability to support them, and that the chil-

dren had not been the victims of some of Brice's criminal offenses. While this evidence only weakly supports Brice's case, such may have been the best that his attorney could do given the material with which she had to work. "Merely because counsel's trial strategy ultimately 'backfired,' does not render his performance deficient." *Graves v. State*, 994 S.W.2d 238, 249 (Tex.App.-Corpus Christi 1999, pet. ref'd, untimely filed).

The majority also notes that Brice's attorney's "presentation of evidence filled one and a half pages of the reporter's record of the final hearing and consisted of a cross-examination of Denton." 135 S.W.3d at 142. The majority concludes from this that counsel's representation was necessarily deficient. This fails to take into account the cursory nature of the trial, of which Brice does not complain. The *Strickland* analysis must take into account "all of the circumstances surrounding the case," *M.S.*, 115 S.W.3d at 545, including "the totality of the representation and the particular circumstances of each case," *Thompson*, 9 S.W.3d at 813; *accord Roe*, 528 U.S. at 480, 120 S.Ct. 1029. In hearings on the termination of parental rights, the National Council of Juvenile and Family Court Judges recommends only that courts allocate sixty minutes. NAT'L COUNCIL OF JUV. & FAMILY COURT JUDGES, Resource Guidelines, *Improving Court Practice in Child Abuse & Neglect Cases* 98. In this case, Denton, who bore the burden of proof, completed her case in less than

---

7. Brice also points to a purported letter that he attaches as an appendix to his brief. An appellate court cannot consider documents before the court as attachments to a party's brief, but not part of the appellate record. *Sabine Offshore Serv., Inc., v. City of Port Arthur*, 595 S.W.2d 840, 841 (Tex.1979) (per curiam). The purported letter does not appear in the clerk's record.

Even if we did consider the purported letter, it would not be strongly probative. The

letter purports to be from Denton's counsel to the trial court to confirm the setting of the final hearing, with copies to Brice and to the attorney ad litem for the children. It purports to be dated September 20, 2001. Brice concludes from this that as of that date, eight days before trial, the trial court had not appointed counsel for Brice. This would hardly support Brice's conclusion that the court appointed counsel on the morning of trial.

two and a half pages of the record. The attorney ad litem for the children presented her case in only four *lines*, without examining any witnesses at all. Under these circumstances, Brice does not show deficient performance.

Accordingly, Brice does not establish that his attorney ad litem rendered deficient performance.

## 2. Prejudice

Next, the majority does not undertake even a cursory analysis of the prejudice prong of the *Strickland* analysis. The majority's application of the prejudice prong is as follows, in its entirety:

Counsel took no opportunity to interview Brice, to request a writ of habeas corpus ad testificandum, to find and interview potential witnesses, to investigate the conviction that was the basis for termination, to request a jury, or to challenge the pleadings or the statute. Applying the second prong of the test, we believe that Brice was prejudiced by his counsel's deficient assistance.

135 S.W.3d at 142.

In the first place, the majority errs in finding prejudice independent of deficient performance, and in ways that Brice does not allege. Here, the majority finds prejudice in matters that it has not even mentioned in its analysis of counsel's performance. By the same token, the majority finds prejudice in ways that Brice does not allege. Again, too, the record does not show that counsel did any of the things that the majority alleges, and does not show that counsel did not do them.

It is well-established that the prejudice analysis is distinct and independent from the performance analysis, and that an ineffective-assistance holding requires findings of both deficient performance and prejudice resulting from that performance.

"[I]neffectiveness claims alleging deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052; *accord M.S.*, 115 S.W.3d at 545, 549–50. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a . . . proceeding if the error had no effect on the judgment." *Strickland* at 691, 104 S.Ct. 2052. The cases in which a party need not show prejudice from counsel's deficient performance are very few, and the conduct of Brice's counsel does not fall within them. *See Bell*, 535 U.S. at 695, 122 S.Ct. 1843; *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). Thus, the prejudice analysis cannot, as the majority does, merely state allegedly deficient performance, then add, "we believe that Brice was prejudiced by his counsel's deficient assistance." *See* 135 S.W.3d at 142. A court's mere belief, unsupported by law, precedent, or rationale, is worthless.

Prejudice, in the ineffective-assistance context, can flow only from counsel's acts or omissions that the appellant identifies, and the court determines, as unreasonable and unprofessional. *See Strickland*, 466 U.S. at 690, 104 S.Ct. 2052; *Phillips v. State*, 992 S.W.2d 491, 494 (Tex.Crim.App. 1999). The only matter in which the majority finds prejudice in which the majority arguably found deficient performance is that counsel "took no opportunity . . . to investigate the conviction that was the basis for termination." *See* 135 S.W.3d at 142. But to the degree that this is so, the record tends to refute the majority's conclusion. At trial, Brice's counsel stated that she had reviewed Brice's criminal history. It can be reasonably inferred that this review included "the conviction that was the basis for termination." And Brice does not suggest that evidence of his of-

fense, conviction, or sentence was subject to challenge.

As for counsel's not taking the opportunity "to challenge the pleadings or the statute," these are more a wish list than a determination of Brice's case. We may not reverse on a theory not advanced by the appellant. *See B.L.D.*, 113 S.W.3d at 351 (no unassigned error in termination cases); *Hailey v. State*, 87 S.W.3d 118, 121–22 (Tex.Crim.App.2002). Nor may we issue advisory opinions. *S.W. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 223 (Tex. 2002). I understand "to challenge ... the statute" to mean to challenge the constitutionality of Family Code Section 161.001. A majority of this Court has been enamored of such challenges, but the Texas Supreme Court has not. *See A.V.*, 57 S.W.3d at 57, *rev'd*, 113 S.W.3d 355. The majority does not suggest any valid constitutional challenge, nor does the majority suggest how the pleadings would be subject to special exceptions that would not have been readily remediable. The majority thus does not suggest prejudice such that the result of the trial would have been different.

Nor does the majority suggest how Brice suffered prejudice in the ways that he does allege. The majority states that Brice's counsel "took no opportunity ... to request a writ of habeas corpus ad testificandum." 135 S.W.3d at 142. "Writ of *habeas corpus ad testificandum*" is a term for what is commonly called in Texas law a bench warrant. *See In re Z.L.T.*, 124 S.W.3d 163, 164 (Tex.2003); *cf. Pedraza v. Crossroads Sec. Sys.*, 960 S.W.2d 339, 342 n. 2 (Tex.App.-Corpus Christi 1997, no pet.). Brice argues, however, that he had filed a request for a bench warrant that was pending before the trial court at the time of trial. An incarcerated defendant in a suit to terminate the parent-child relationship has no per-se right to attend the proceedings in person. *Z.L.T.* at 165–66. Neither Brice nor the majority suggests that the trial court would have erred to overrule Brice's request.

The majority also states that Brice's "counsel took no opportunity to interview Brice [or] to find and interview potential witnesses." 135 S.W.3d at 142. Again, the majority does not state how Brice suffered prejudice, and Brice fails to show prejudice. An appellant does not establish ineffective assistance in the failure to investigate "unless the consequence of the failure to investigate 'is that the only viable defense available to the accused is not advanced[,]' and 'there is a reasonable probability that, but for counsel's [failure to advance the defense], the result of the proceeding would have been different.'" *McFarland v. State*, 928 S.W.2d 482, 501 (Tex.Crim.App.1996) (quoting *Ex parte Duffy*, 607 S.W.2d 507, 517 (Tex.Crim.App. 1980) (en banc), and *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052) (alterations in *McFarland*); *cf. Wiggins*, 539 U.S. at ——, 123 S.Ct. at 2533 (record showed mitigation case would have included "state social services, medical, and school records," and testimony of the defendant and of "numerous family members," and would have shown "severe physical and sexual abuse [defendant] suffered at the hands of his mother and while in the care of a series of foster parents"). Review of counsel's communication with the client is similar. *See Anguiano v. State*, No. 08–02–00311–CR, 2004 WL 178576 at * 2–3, 2004 Tex. App. LEXIS 910, at * 7–* 8 (Tex.App.-El Paso Jan. 29, 2004, no pet.) (not designated for publication); *see Mallet v. State*, 9 S.W.3d 856, 867 (Tex.App.-Fort Worth 2000, no pet.); *Brooks v. State*, No. 01–01–00388–CR, 2002 WL 1041350 at * 2–3, 2002 Tex.App. LEXIS 3735, at * 6–* 7 (Tex. App.-Houston [1st Dist.] May 23, 2002, no pet.) (not designated for publication). As to prejudice, Brice argues only that there

is a reasonable probability that a jury would not have terminated his parental rights if he, his mother, and his sister had testified at trial. The record properly before us does not show what this testimony would have been, nor thus how it might have benefited Brice.[8] However, Denton testified that the children had no desire to see Brice, that she and her new husband intended to adopt the children, and that adoption was what the children wanted. The attorney ad litem for the children also argued that termination was what the children wanted. The best-interest element of the termination cause of action concerns the interest of the child, not of the parent. *Swate v. Swate*, 72 S.W.3d 763, 767 (Tex. App.-Waco 2002, pet. denied). In light of the other evidence, it cannot be said on this record that testimony by Brice and his family to the effect that termination was not in the best interest of the children would undermine confidence in the outcome of the trial. Thus, Brice has not shown prejudice from his counsel's investigation.

The majority also states that Brice's attorney ad litem "took no opportunity . . . to request a jury." 135 S.W.3d at 142. Not requesting a jury trial does not constitute ineffective assistance of counsel where the record does not disclose counsel's rea-

sons or does not demonstrate prejudice. *See Ajagbe v. State*, Nos. 01–03–00116–CR & 01–03–00117–CR, 2004 WL 213652 at * 3, 2004 Tex.App. LEXIS 1106, at * 8 & n. 2 (Tex.App.-Houston [1st Dist.] Feb. 5, 2004, no pet.) (not designated for publication) (mem.op.); *e.g., Reyes v. State*, No. 13–99–534–CR, 2001 Tex.App. LEXIS 2414, at * 8 (Tex.App.-Corpus Christi Apr. 12, 2001, pet. ref'd) (not designated for publication); *Huynh v. State*, 833 S.W.2d 636, 639–40 (Tex.App.-Houston [14th Dist.] 1992, no pet.). The record here, again, does not disclose these matters.

The majority does not suggest how, even if supported by the record, which they are not, these allegations would undermine confidence in the outcome of this trial. In light of the unchallenged evidence, this termination cause of action comes at least very close to being established as a matter of law. Brice argues only that his attorney might have prevented a judgment of termination by avoiding a finding that termination was in the best interest of the children. Brice does not argue that counsel could have defeated findings on Brice's convictions and imprisonment, the predicate acts alleged as grounds for termination. Indeed, Brice's convictions and imprisonment themselves are strongly probative that termination would be in the best interest of the children. Of course,

8. In this connection, Brice attaches as appendices to his brief the affidavits of his mother and sister. Again, we cannot consider these affidavits. *See Sabine Offshore Serv.*, 595 S.W.2d at 841.

Even if we considered these conclusory affidavits, they would not undermine confidence in the outcome of the trial. The affidavits state, in identical terms:

I was reading [sic], willing and able to testify in the trial of the termination of parental rights suit. The testimony that I would have given would have been to support that it was not in the best interest of the minor children A[.] R[.] B[.] and B[.] J[.] B[.] to have their father's (Gene Olin Brice) parental rights terminated. . . . During all of

the visits to Gene Olin Brice since his incarceration, he has always inquired about the minor childrens' [sic] health, safety and well being. Gene Olin Brice has expressed his love for his children during these visits and in his correspondence.

The best interest of the child means just that, not the best interest of the parent. *Swate v. Swate*, 72 S.W.3d 763, 767 (Tex.App.-Waco 2002, pet. denied). In light of the record evidence of Brice's sexual assaults on his young children and the lengthy incarceration that resulted, this affidavit evidence of Brice's belated concern for the children would not undermine confidence in the finding that termination was in the children's best interest.

an incarcerated parent is "unable to care for the child from prison." *In re C.H.*, 89 S.W.3d 17, 28 (Tex.2002); *see In re C.N.S.*, 105 S.W.3d 104, 106 (Tex.App.-Waco 2003, no pet.) (criminal history probative on parental abilities of individuals seeking custody). Evidence of a parent's criminal history may be probative of a parent's "pattern of conduct that is inimical to the very idea of child-rearing." *C.H.* at 28. It is probative on the emotional and physical danger to the child. *C.N.S.* at 106; *In re U.P.*, 105 S.W.3d 222, 231–32 (Tex.App.-Houston [14th Dist.] 2003, pet. denied). It is also probative on the acts or omissions of the parent which may indicate that the parent-child relationship is improper. *U.P.* at 231–32; *In re C.T.E.*, 95 S.W.3d 462, 466 (Tex.App.-Houston [1st Dist.] 2002, pet. denied); *see In re D.E.*, No. 04–02–00825–CV, 2003 WL 21215981 at *1, 2003 Tex. App. LEXIS 4487, at *3 (Tex.App.-San Antonio May 28, 2003, no pet.) (mem.op.). A parent's criminal conduct is most probative on the best interest of the child when it can be inferred from the conduct that the parent has directly endangered the safety of the child and when the conduct results in the parent's long imprisonment. *C.T.E.* at 466.

It is almost inconceivable that a rational finder of fact would not find that it was in the best interest of the children to terminate Brice's parental rights. The evidence introduced at trial was that Brice had been convicted of "molesting" his children and sentenced to thirty years' imprisonment, of which he had served about four years at the time of trial. Brice does not suggest that this is false. A defendant imprisoned on a thirty-year sentence for aggravated sexual assault of a child will not become eligible for parole for at least fifteen calendar years. *See* TEX. GOV'T CODE ANN. § 508.145(d) (Vernon Supp.2004). Even after such a defendant becomes eligible for parole, it is doubtful that the parole board would recommend parole for a child abuser.[9] The children were nearly ten years old at the time of the termination trial in 2001. It is, therefore, very unlikely that the children would ever even see Brice during the remainder of their childhood.

Under these circumstances, Brice's allegations of deficient performance by his attorney ad litem do not undermine confidence in the outcome of the trial. Accordingly, Brice does not show prejudice.

## III.  C.  CONCLUSION

The record before us, in showing neither that Brice's attorney ad litem rendered deficient performance nor that Brice suffered prejudice from her performance, does not rebut the presumption that the attorney rendered effective assistance of counsel. Thus, I respectfully dissent from the sustaining of Brice's ineffective-assistance issue.

## IV.  CONCLUSION

For these reasons, I respectfully dissent from the determination that we have jurisdiction, from the failure to abate for the trial court to determine Brice's representation on appeal, and from the holding that Brice establishes that he received ineffective assistance of counsel. This case should be dismissed for want of jurisdic-

---

9. In Fiscal Year 2002, the parole approval rate for aggravated sex offenses was 2.7 %. TEX.CRIM. JUSTICE POLICY COUNCIL, FISCAL YEAR 2002 PAROLE APPROVAL RATES BY OFFENSE TYPE (2003), http://www.cjpc.state.tx.us/stat tabs/paroleandtimeserved/02Paroleandtime servedinprisonsection2.pdf (last updated Jan. 15, 2003). In Fiscal Year 2001, the rate was 3.1%. BD. OF PARDONS & PAROLES, STATE OF TEX., FISCAL YEAR 2001 ANNUAL REPORT 42 (2001), http://www.tdcj.state.tx.us/bpp/publications/ 2001TBPP.pdf (last visited Feb. 10, 2004).

tion; or, if not dismissed, abated and remanded for a hearing on Brice's representation by counsel on appeal.

It is especially regrettable that the majority's decision will require another lengthy detour through the Texas Supreme Court, on the way to reversal there, as have far too many of the decisions of a majority of this Court in suits affecting the parent-child relationship. *See In re A.F.*, 91 S.W.3d 410 (Tex.App.-Waco 2002) (mem.op.) (per curiam), *rev'd,* 113 S.W.3d 363 (Tex.2003) (per curiam); *In re K.N.R.*, No. 10–01–300–CV (Tex.App.-Waco Apr. 24, 2002) (not designated for publication) (mem op.) (per curiam), *rev'd,* 113 S.W.3d 365 (Tex.2003) (per curiam); *B.L.D.*, 56 S.W.3d 203; *A.V.*, 57 S.W.3d 51; *In re J.F.C.*, 57 S.W.3d 66 (Tex.App.-Waco 2001), *rev'd,* 96 S.W.3d 256.